In re Petition for DISCIPLINARY ACTION AGAINST Brian A. SWERINE, an Attorney at Law of the State of Minnesota.

No. CX–93–1799.

Supreme Court of Minnesota.

March 18, 1994.

**464**

Marcia A. Johnson, Director of Lawyers Professional Responsibility Bd., Betty M. Shaw, Kenneth Jorgensen, Sr. Asst. Directors, St. Paul, for appellant.

Timothy Ostroot, Champlin, for respondent.

---

OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against Brian Swerine in August 1993.[1] In September 1993, based upon respondent's stipulation with the Office of Lawyers Professional Responsibility, we temporarily suspended him from the practice of law pending final disposition of this disciplinary proceeding. After respondent failed to answer the allegations in the petition for disciplinary action, they were deemed admitted pursuant to Rule 13(b) of the Rules on Lawyers Professional Responsibility. In light of admitted allegations of misappropriation, misrepresentation, forgery and other violations, respondent is disbarred.

The petition before us sets forth five counts of misconduct. Respondent has misappropriated client funds from several clients; made misrepresentations in an effort to conceal the misappropriations; forged, or endorsed without authorization, client settlement checks; and failed to maintain proper trust account books and records. The violations occurred during the period from June 1992 through June 1993.[2]

First, respondent was retained by Annette and Wade Inskeep to represent them in a personal injury action. Respondent settled the claim with the defendant's insurer for $12,000, without obtaining the Inskeeps' authorization or informing them of the settlement. He forged the signatures of the Inskeeps on the settlement check, deposited it in his trust account and issued trust account checks to himself and his law clerk from the settlement funds. Respondent then made misrepresentations to the Inskeeps leading them to believe their claim was still pending. After finally obtaining the Inskeeps' authority to settle the case, respondent issued them a check which caused an overdraft on his trust account due to his earlier misappropriation. The account remained overdrawn for several weeks until respondent deposited conservatorship funds from the Michelle Walker Conservatorship to cover the over-

---

1. Respondent was admitted to practice law in Minnesota in October 1987.

2. The Director of the Office of Lawyer's Professional Responsibility audited respondent's trust account records for the period from May 1992 through June 1993.

draft. In the course of representing the Inskeeps, respondent thus misappropriated clients' settlement funds, forged clients' endorsements on a settlement check, and made misrepresentations to the clients in violation of Minn.R.Prof. Conduct 1.4, 1.15(a), 4.1, and 8.4(b), (c) and (d).

The second count of misconduct arose from respondent's representation of Theresa Walker and the Michelle Walker Conservatorship in the sale of real estate in June 1993. Respondent received a check for $15,721.50, representing sale proceeds of real estate owned jointly by Theresa and Michelle Walker, and made payable to them. Respondent had Theresa Walker and a conservator for Michelle Walker endorse the check and deposited it into his trust account, telling them that he would be issuing each a trust account check for $7,500 representing their share of the proceeds. He did pay Theresa Walker, but failed to issue a check for the amount owed to the Michelle Walker Conservatorship. The balance in respondent's trust account would not have covered such a payment at that time.

When the overdraft caused by the check written to the Inskeeps was reported to the Director of the Office for Lawyers Professional Responsibility, respondent falsely swore under oath that a substantial portion of the deposit of real estate proceeds belonged to him as fees for services rendered to the Michelle Walker Conservatorship. Respondent produced a billing statement, which he falsely claimed had been sent to the conservator, showing fees due him from the conservatorship of $7,366. He had not actually sent the billing statement to the conservator, nor had the conservator authorized him to deduct the fees from the proceeds of the sale; further, the conservator disputes the amount of fees owed. In the Michelle Walker Conservatorship matter, respondent misappropriated conservatorship funds and made false statements under oath concerning his entitlement to conservatorship funds in violation of Minn.R.Prof. Conduct 1.15(a), 8.1(a)(1) and (2), and 8.4(b), (c), and (d).

The third count of misconduct arose when William Moorehouse retained respondent to represent him in a marital dissolution. Moorehouse paid respondent a $100 retainer and a payment of $1,000. Respondent received a check of $58,811.52 representing proceeds from the sale of Moorehouse's home. After depositing the funds in his trust account, respondent began disbursing funds to himself for fees for his representation of Moorehouse. He did not obtain the client's authorization, nor did he provide the client with monthly billing statements showing the fees drawn from the trust account funds.

Several months later, Moorehouse discharged respondent and retained new counsel. Respondent made various promises to return Moorehouse's file and the Moorehouse trust account funds, but did not fulfill them. When respondent finally forwarded the file and a trust account check for $51,801.77, he informed Moorehouse's new counsel that he was withholding $7,009.75 for fees earned representing Moorehouse. Respondent's billing statement did not credit Moorehouse for the $1,100 he had already paid. When Moorehouse's new counsel deposited the check, he was notified that respondent had insufficient funds in his trust account to cover the check.[3] Respondent deposited various amounts in the trust account which allowed the Moorehouse check to clear. Respondent thus misappropriated client funds and failed to promptly forward funds to the client's new attorney in violation of Minn.R.Prof. Conduct 1.15(a), (b)(4), 1.16(d) and 8.4(c) and (d). Respondent also collected an excessive fee by failing to credit his client's account for a retainer and $1000 payment in violation of Minn.R.Prof. Conduct 1.5(a).

The fourth count of misconduct concerned respondent's representation of Brandy Baird in a civil matter. Respondent required Baird to pay a $1,000 retainer and also entered into a written fee agreement providing for a one-third contingency fee. Respondent recommended that Baird settle her claim for $1,000, telling her that she would receive all

3. Respondent's misappropriations left his trust account short by approximately $1,500 to $15,- 000 at different times during December of 1992.

of the proceeds, and Baird authorized him to accept the settlement offer. Respondent issued Baird a trust account check for $500 when he had not yet received the settlement check from the defendant and there were no funds in the trust account to pay her. The check was paid out of Moorehouse funds in respondent's trust account. When respondent did receive the settlement check, he endorsed it for Baird without her authorization and deposited it into a personal account. After Baird's repeated efforts to collect the remaining $500 of the settlement, respondent issued her a check drawn on a business account. In misappropriating Baird's settlement funds and endorsing Baird's settlement check without authorization, respondent violated Minn.R.Prof. Conduct 1.15(a) and (b)(4), and 8.4(c) and (d).

The fifth count of misconduct resulted from respondent's failure to maintain client subsidiary ledgers and to balance and reconcile his trust account during the period from May 1992 to June 1993, as well as his false assertion on his 1992 annual attorney registration statement that he maintained the required trust account books and records. Failure to maintain required trust account records, failure to balance and reconcile a trust account and a false certification on the annual attorney registration statement violate Minn.R.Prof. Conduct 1.15(a), (g) and (h), and 8.4(c) and (d).

■ The only issue before us is the appropriate sanction to be imposed. *In re Olsen*, 486 N.W.2d 382 (Minn.1992). Respondent's violations include misappropriating funds from four clients, forging client signatures; making numerous misrepresentations to clients, including settling cases without clients' authorization and endorsing clients' checks without authorization; collecting an excessive fee, and giving perjured testimony during his disciplinary proceedings.

We have stated that misappropriation of client funds usually merits the sanction of disbarment unless the attorney presents clear and convincing evidence of substantial mitigating circumstances which show that the attorney did not intentionally convert the funds. *In re LaChapelle*, 491 N.W.2d 17, 21 (Minn.1992). In respondent's case, there are no mitigating circumstances to consider; the facts have been admitted and respondent has not presented any evidence.

There is further justification for the sanction of disbarment in our previous holding that "[M]isappropriation of client funds involving forgery of the client's signature warrants disbarment." *In re Hunter*, 473 N.W.2d 866, 868 (Minn.1991). Respondent endorsed two clients' checks without their authorization. In the Inskeep matter, respondent settled the case without authorization and forged the client's endorsement on a settlement check.

Respondent's misrepresentations to his clients and the Director of the Office of Lawyers Professional Responsibility also merit discipline. To conceal his misappropriation, respondent made false representations to the Inskeeps that he had not settled their claim. Respondent then used the Walker Conservatorship funds to cover his misappropriation. When questioned by the Office of Lawyer's Professional Responsibility about the Walker Conservatorship funds, respondent falsely testified in a sworn statement during the disciplinary proceeding that the missing funds represented fees earned for legal work for the Conservatorship. He then falsely represented that a billing statement had been sent to the conservator. We have stated that we will not hesitate to impose severe discipline when a lawyer demonstrates a lack of truthfulness and candor to the offices of the judicial system. *In re LaChapelle*, 491 N.W.2d at 21. We also consider misrepresentations to the Director of the Office of Lawyer's Professional Responsibility about the maintenance of trust accounts even more egregious when they are made in conjunction with violations of other rules. *Id.* Here, as in *LaChapelle*, the respondent made the misrepresentations in conjunction with intentional misappropriations.

■ Respondent also failed to maintain trust account books and records and made a false certification in 1992 that he had maintained proper records. As an independent violation, improper maintenance of trust accounts generally warrants suspension. *In re Porter*, 449 N.W.2d 713, 718–19 (Minn.1990).

Here, this violation must be considered in light of the larger pattern of deception.

Respondent's posture before this court is also aggravated by several factors, including the vulnerable nature of two of the clients from whom respondent took funds. One client was an 80 year old man who entrusted all of the proceeds from the sale of his home to respondent. The other client was a conservatorship established for a vulnerable adult. We have previously considered client vulnerability an aggravating factor in disbarring attorneys for misappropriating funds. *See, e.g., In re Larsen,* 459 N.W.2d 115, 120 (Minn.1990) (vulnerable elderly person); *In re Peterson,* 456 N.W.2d 89, 93 (Minn.1990) (trusting vulnerable client); *In re Franke,* 345 N.W.2d 224, 228 (Minn.1984) (attorney has heavy burden to persuade court of fitness to practice law where he exhibits callous disregard for physical and financial wellbeing of vulnerable, dependent persons). Victim vulnerability is also considered an aggravating factor under the ABA standards for imposing discipline. *Standards for Imposing Lawyer Sanctions,* Standard 9.22(h) (A.B.A. 1991).

A second aggravating factor is respondent's failure to make restitution to some of his victims. He has not made restitution to the Walker Conservatorship for $7,500 misappropriated, nor to William Moorehouse for over $7,000 in fees taken without authorization from Moorehouse's funds. We have cited restitution as a mitigating factor in instances where a sanction less than disbarment was imposed for misappropriation of funds. *See In re Sampson,* 408 N.W.2d 574, 577 (Minn.1987). The ABA standards also state that indifference toward restitution is an aggravating factor in determining discipline. *Standards for Imposing Lawyer Sanctions,* Standard 9.22(j) (A.B.A.1991).

We find further justification for the sanction of disbarment in respondent's conduct during the investigation into his misconduct. First, respondent continued to misappropriate funds after an investigation began into his misappropriation of the Moorehouse funds. Although he stipulated to his temporary suspension and to the filing of this disciplinary proceeding, respondent then failed to answer the petition in this matter and also failed to comply with rules requiring that he prove he has notified his clients of his suspension and returned their files. We consider failure to cooperate with the Director of the Office of Lawyer's Professional Responsibility as a factor in concluding that an attorney's misconduct warrants disbarment. *Matter of Discipline of Feldman,* 391 N.W.2d 826, 828 (Minn.1986).

Respondent has not made any claim of mitigating circumstances. We conclude that respondent's misconduct warrants disbarment.

Disbarred.