**In re Petition for DISCIPLINARY ACTION AGAINST Hubert Gregory LEON, an Attorney at Law of the State of Minnesota.**

No. C1–94–1135.

Supreme Court of Minnesota.

Dec. 16, 1994.

---

Marcia A. Johnson, Director, Lawyers Professional Responsibility Board, Candice M. Hojan, Sr. Asst. Director, St. Paul, for petitioner.

Hubert Gregory Leon, pro se.

OPINION

PER CURIAM.

On June 1, 1994 the Director of the Office of Lawyers Professional Responsibility filed

a petition for disciplinary action against Hubert Gregory Leon, who was admitted to the practice of law in Minnesota on May 11, 1990. Leon admitted service of the petition and entered into a stipulation for temporary suspension, and since September 7, 1994 Leon has been suspended from the practice of law pending the outcome of these proceedings. Although the stipulation included a reservation of the right to contest the allegations of the petition for discipline, Leon has made no response to the petition. Consequently, by this court's order of September 7, 1994, the allegations were deemed admitted pursuant to Rule 13(b), Rules on Lawyers Professional Responsibility.

From the time of his admission to the bar in the spring of 1990 until his employment was terminated effective on January 15, 1994 Leon was employed in Minneapolis as an associate lawyer by the law firm of Peterson, Engberg & Peterson in Minneapolis. Over a period of 18 months Leon engaged in five separate transactions in which he misappropriated funds belonging either to clients or to his employer law firm.

Leon's first known misappropriation occurred on May 8, 1992 when Leon requested and received a $540 check from the firm trust account as reimbursement for airfare to attend a video-taped deposition of an expert witness scheduled in New York State in connection with a client's personal injury action. On May 13, 1992 Leon notified the court reporter of cancellation of the deposition. Leon cashed the expense check and kept the $540 but did not purchase an airline ticket.

When the action was settled, the expenses charged the client included the $540 cost of airfare to attend a deposition which had never taken place. When the law firm discovered Leon's perfidy, it reimbursed the client. Although Leon agreed to execute a confession of judgment in an amount sufficient to cover the fictitious airline ticket, he had not done so at the time the petition for disciplinary action was filed.

A month later, in June 1992, Leon pocketed a $600 fee for a marriage dissolution.

The fee belonged to the law firm, but Leon did not surrender the fee or disclose that it had been paid. Instead Leon directed the billing clerk to give him the monthly billing statements for delivery to the client. That the fee had long since been paid did not surface until after termination of Leon's employment. The undelivered statements, which billed fees and expenses of $1,101.10, were found after Leon's discharge.

The following year, in June 1993, Leon represented to the law firm that he had paid tuition of $550 in connection with his attendance at certain seminars sponsored by the Minnesota State Bar Association Continuing Legal Education and requested reimbursement. Leon then appropriated the proceeds of the reimbursement check for his personal use, leaving the tuition bill unpaid.

In the spring of 1993 through the Hennepin County Bar Association Leon undertook representation pro bono of the adoptive parents in connection with an adoption proceeding. In September Leon requested and received a $60.54 check from his pro bono clients in payment of the publication fee with respect to the required notice of the adoption proceeding. Leon misappropriated the proceeds of the check. When the firm received a bill after Leon's discharge, it paid the publication fee on the client's behalf.

In 1993 the firm represented an employee in connection with a claim for workers' compensation benefits. The matter was assigned to Leon and a more senior associate for handling, and in May of that year Leon concluded a stipulated settlement and secured an order for attorney fees and costs and disbursements. The workers' compensation insurer paid attorney fees of $2,525.81 in July, and Leon cashed the check, which had been made payable to his order, and again misappropriated the proceeds. When the senior associate inquired about the status of the file, Leon falsely reported that payment had not yet been made. Leon then turned the file over to the other associate, withholding the current correspondence, the stipulation for settlement and the order. In Octo-

ber Leon cashed the insurer's check in payment of the firm's costs and disbursements of $1,245.11 and once more pocketed the proceeds.

The firm discovered Leon's misappropriations when the workers' compensation insurer provided copies of the checks for attorney fees and disbursements in response to the firm's inquiry.

Leon's employment was terminated effective January 15, 1994. At that time Leon acknowledged his obligation to pay the unpaid C.L.E. tuition fees of $550 and agreed to execute a confession of judgment in favor of the firm in the total amount of $4,971.46. The record discloses that neither payment nor confession of judgment had been accomplished at the time the petition for disciplinary action was filed.

Compared to the amounts of the misappropriations involved in most cases in which the court has ordered disbarment, Leon's misappropriations might be characterized as petty theft. Nevertheless, as we recently noted in *In re Shoemaker*, 518 N.W.2d 552, 555 (Minn.1994), "when 'a lawyer engages in serious criminal conduct a necessary element of which includes * * * false swearing, misrepresentation, fraud, extortion, misappropriation, or theft * * *,' " [quoting *ABA Model of Standards*, Standards for Imposing Lawyer Sanctions 5.11 (1992)], the ABA standards recommend disbarment. Leon's misconduct was neither isolated nor the result of the careless bookkeeping and accounting practices that often accompany a sole practitioner's commingling of business and trust account funds and misappropriation of client funds. Over a period of 18 months during the 3½ years between his admission to the bar and the termination of his association with the law firm, Leon regularly and purposely circumvented the firm's billing and accounting procedures in order to appropriate funds belonging to clients or his employer and misrepresented the status of files in order to conceal his thefts.

Nothing in the record suggests the presence of any mitigating circumstance. Although inexperience in the practice of law is sometimes recognized as a mitigating factor, that Leon had practiced for only 2 years before embarking on this series of misappropriations can hardly be said to excuse theft or mitigate in any way the seriousness of his misconduct.

Although most of Leon's misappropriations were of funds belonging to the law firm that employed him, his misappropriation of $60.54 from a client he had undertaken to represent pro bono not only constitutes an aggravating factor but also clearly illustrates the risk of harm to the public posed by his continued presence at the bar.

Leon has violated Minnesota Rules of Professional Conduct, Rule 8.4(c) (professional misconduct by engaging in dishonesty, fraud, deceit or misrepresentation) and Rule 8.4(d) (professional misconduct by engaging in conduct that is prejudicial to the administration of justice). Because Leon's disregard of a lawyer's obligations impugns the integrity of the judicial system and the legal profession and has caused direct harm to the public, he is hereby disbarred. Leon shall pay to the Director costs and disbursements in the amount of $750 pursuant to Rule 15(a)(8), RLPR.

Disbarment ordered.