In re Petition for DISCIPLINARY ACTION AGAINST Mark T. WEEMS, an Attorney at Law of the State of Minnesota.

No. C0–92–2000.

Supreme Court of Minnesota.

Dec. 15, 1995.

Marcia A. Johnson, Director, Office of Lawyers Professional Responsibility, Betty M. Shaw, Senior Asst. Director, St. Paul, for appellant.

Mark T. Weems, Shoreview, for respondent.

## OPINION

PER CURIAM.

■ The Director of the Office of Lawyers Professional Responsibility has petitioned this court for revocation of probation and further disciplinary action, and for temporary suspension pending final determination of these proceedings relating to respondent Mark T. Weems. The petitions allege improper conduct involving several clients including misappropriation of client funds, pattern of neglect, non-communication, failure to return client funds and unearned retainers, non-cooperation, and other violations of the terms of probation. On June 7, 1995, we ordered that respondent be temporarily suspended from the practice of law pending final determination of the disciplinary proceedings. Although respondent had signed a stipulation for temporary suspension that reserved his right to contest the allegations of the petition for discipline, respondent made no response to the petition; consequently, the allegations were deemed admitted pursuant to Rule 13(b), Rules on Lawyers Professional Responsibility. Therefore, the only issue before the court is the appropriate sanction to be imposed. Rule 13(b), RLPR.

On November 3, 1992, we publicly reprimanded respondent and placed him on unsupervised probation for two years for false notarization of a client's signature on a marital dissolution petition, failure to obtain the client's verification of the petition before mailing it to his client's spouse, and neglect of the proceeding for a period of several months, despite his client's repeated requests that he take action. *In re Weems*, 491 N.W.2d 660 (Minn.1992).

Respondent continued to engage in misconduct while on probation, including neglect and failure to communicate with a client in handling an estate, failure to communicate with a client in a civil litigation matter, failure to cooperate in the investigation of a trust account overdraft, and failure to maintain appropriate trust account books and records. Accordingly, on September 29, 1994, we revised and extended the previously unsupervised probation. *In re Weems*, 521 N.W.2d 856 (Minn.1994).

In May 1995, the Director initiated further disciplinary proceedings against respondent for additional misconduct. Respondent failed to answer the petition as noted above, resulting in the deemed admission of the allegations, and also failed to submit a written proposal to the court regarding the appropriate discipline to be imposed. Respondent further failed to appear at oral argument on October 11, 1995.

The petition for revocation of probation and for further disciplinary action sets forth four counts of unprofessional conduct warranting further discipline.

*Violation of the Terms of Probation*

Respondent failed to comply with the terms of our second order for probation dated September 29, 1994. The order required respondent to provide to the Director the names of four attorneys who agreed to be nominated as his supervisor within two weeks of the date of the court's order. *In re Weems,* 521 N.W.2d at 856–57. The order also required respondent to cooperate fully with the supervisor in her efforts to monitor his compliance with the probation. *Id.* at 857. After three written requests from the Director, respondent finally provided the supervisor nominees on December 23, 1994. Respondent never contacted the supervisor to begin the supervision process nor did he return numerous voice mail messages from the supervisor. Respondent did not return the agreement for supervision that the Director sent to him on January 23, 1995, nor did he provide to the Director a written plan outlining office procedures, another term of the probation. Further, the client inventory provided to the Director omitted the names of several clients.

*Misappropriation of Client Funds*

Respondent misappropriated a total of almost $70,000 from two dissolution clients and their former spouses. Respondent represented M.A.L. in a marriage dissolution. In April 1992, the home that M.A.L. had owned with her husband was sold, and respondent agreed to deposit the proceeds of the sale, $59,970.08, into his trust account pending resolution of the property division. Despite respondent's representations that he had deposited the proceeds in his trust account and that the proceeds were still there in the fall of 1994, bank records indicate that from October 21, 1993, through February 17, 1994, respondent never had more than $2,339 in his trust account. When the Director received an overdraft notice on respondent's trust account in February 1994, respondent did not disclose that he was supposed to be holding almost $60,000 in trust from the sale of the home. On February 28, 1995, the court entered a judgment and decree in the dissolution dividing the house proceeds held by respondent. Despite demands from both parties that he distribute the $59,970.08 in

accordance with the decree, respondent failed to distribute the money or return their calls, nor has respondent made restitution.

Respondent also represented S.B.P. in a marriage dissolution. In about May 1994, respondent placed $10,000 from the sale of the proceeds of the marital home into his trust account to be held in escrow until further order of the court dividing the money. In about June or July 1994, respondent, without authorization of the adverse party, withdrew $1,800 of the escrowed funds and disbursed the funds to S.B.P. At about the same time, respondent also withdrew $3,000 to pay his own attorney fees without authorization of S.B.P. or the adverse party. On January 20, 1995, the court divided the escrowed funds and ordered respondent to issue checks in accordance with the division and ordered respondent to retain $750 in his trust account. Respondent failed to disburse the escrowed funds in violation of the court order.

*Pattern of Neglect, Non–Communication, and Failure to Return Client Files and Unearned Retainers*

Respondent engaged in a pattern of neglect, non-communication, and failure to return client files and unearned retainers involving five separate clients. In representing S.B.P. in the dissolution of her marriage, respondent failed to provide responses to written discovery requests, failed to return telephone calls, and failed to pursue collection of maintenance and child support as his client requested. When respondent was served with a motion to reduce maintenance and to divide the funds purportedly being held by respondent in escrow from the sale of the home, respondent failed to prepare and serve any responsive affidavits, and the court refused to accept his attempt to file responsive documents on behalf of his client at the hearing. The court later ordered respondent to pay $750 in attorney fees.

R.B.P. retained respondent to represent her in a marriage dissolution and paid him $1,000 in March 1994. Respondent drafted a petition and made limited attempts to negotiate a marital termination agreement, but he did not file the petition, nor did he seek temporary child support as his client re-

quested. Respondent failed to return phone calls from R.B.P., and in November 1994, she discharged respondent and requested her file and a refund of the unearned portion of her retainer. In his response to her subsequent complaint, he admitted his neglect and non-communication and agreed to return $650 of her retainer, but he did not return the unearned portion of her retainer as he agreed.

C.C.H. retained respondent to represent her in a marriage dissolution in 1994. Respondent drafted the summons and petition in July 1994, but never served or filed them. For several months, he failed to return her phone calls, and in March 1995, C.C.H. retained new counsel and requested her file by certified letter. Respondent did not respond to the letter nor did he return her file.

G.D.M. retained respondent in September 1994 regarding a problem he was having with his new home and paid him a retainer of $750. In about early December 1994, respondent misrepresented to G.D.M. that he had filed a class action suit on his behalf. Respondent never provided him with any indication that he had done work on this matter and never responded to numerous voice mail messages left for him over several months. Respondent returned the file and some, but not all, of the client's original documents over two months after the file was first requested, and then only through the intervention of a third party. Respondent has made no accounting or returned any unearned portion of the retainer.

J.E.D. retained respondent in 1991 to represent her in a personal injury matter. Respondent did not keep her apprised of the status of the matter and for several months failed to respond to numerous voice mail messages. On April 1, 1995, J.E.D. wrote to respondent and requested her file. Respondent failed to answer her letter and that of her substitute counsel and has not returned her file or her original documents. Further, she paid respondent $210 in January 1994 to obtain a permanency rating on her injury but has received no accounting regarding his use of those funds.

*Non–Cooperation with Director and District Ethics Committee*

Respondent has also engaged in a pattern of non-cooperation with the Director and the District Ethics Committee (DEC) in the investigation of client complaints. On February 9, 1995, the Director wrote to respondent regarding a February 9, 1995, overdraft on his trust account. Despite several requests for a written response, none was forthcoming. On January 3, 1995, the Director mailed a notice of investigation regarding R.B.P.'s complaint, but respondent failed to provide a timely written response and failed to respond to numerous voice mail messages and a letter to respondent from the DEC investigator requesting further information. In March and April 1995, the Director mailed five notices of investigation to respondent regarding five separate complaints about him. Although the Director requested a written response to each of these complaints within two weeks, respondent ignored them all.

We therefore turn to what discipline to impose for respondent's misconduct. We impose sanctions not to punish the attorney, but to protect the public, to guard the administration of justice, and to deter future misconduct. *In re Jensen*, 418 N.W.2d 721, 722 (Minn.1988). In determining the appropriate sanction, this court weighs "the nature of the misconduct, the cumulative weight of the disciplinary rule violations, and the potential harm to the public, to the legal profession, and to the administration of justice." *In re Shoemaker*, 518 N.W.2d 552, 555 (Minn.1994).

Respondent misappropriated a total of almost $70,000 from two clients. The intentional misappropriation of client funds, standing alone, usually warrants disbarment. *In re LaChapelle*, 491 N.W.2d 17, 21 (Minn. 1992). For example, in *Shoemaker*, this court ordered the disbarment of an attorney with no prior disciplinary record for the misappropriation of $75,981.99 over a three-year period. 518 N.W.2d at 553 and 555. In cases where this court has not imposed disbarment for extensive misappropriation of client funds, substantial mitigating circumstances were present. *In re Olsen*, 487 N.W.2d 871, 874 (Minn.1992). Because re-

spondent has made no response to the petition, there are no mitigating circumstances to consider here. Moreover, the failure of respondent to make restitution constitutes an aggravating factor. *In re Swerine,* 513 N.W.2d 463, 467 (Minn.1994).

In this case, additional serious violations accompany the misappropriation of client funds. After a disciplinary proceeding, we expect a renewed commitment to comprehensive ethical and professional behavior. *In re Hart,* 445 N.W.2d 836, 839–840 (Minn.1989), citing *In re Simonson,* 420 N.W.2d 903, 906 (Minn.1988). Despite two disciplinary proceedings in two years, however, respondent repeatedly violated the terms of his second public probation and continued to engage in other activities of serious misconduct noted above. In short, respondent has violated at least ten Minnesota Rules of Professional Conduct: Rule 1.3 (failure to act with reasonable diligence and promptness in representing clients); Rule 1.4 (failure to keep clients reasonably informed); Rule 1.15(a) (trust account violations); Rule 1.15(b)(4) (misappropriation of client funds); Rule 1.16(d) (failure to return client files when requested and failure to refund any unearned retainers upon discharge); Rule 3.2 (failure to make reasonable efforts to expedite litigation); Rule 3.4(c) (disobeying a court order); Rule 8.1(a)(3) (failing to cooperate with discipline authority); Rule 8.4(c) (misrepresentation to clients about status of matter); Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice).

We have consistently ordered disbarment in cases with a similar history of disciplinary violations. *See, e.g., In re Pang,* 522 N.W.2d 921 (Minn.1994) (concluding that disbarment is warranted for attorney who, over a period of years, engaged in repeated and continued neglect of client matters, misappropriated client funds, and failed to cooperate with the Director's investigation); *In re Ladd,* 463 N.W.2d 281 (Minn.1990) (ordering disbarment for misappropriating client and partnership funds, neglecting legal matters, and failing to cooperate with the Director). Several of the charges against respondent, even taken in isolation, could provide the basis for lengthy suspension or disbarment. "Taken in the aggregate, 'the cumulative weight and severity of these disciplinary rule violations compel disbarment.'" *In re Graham,* 503 N.W.2d 476, 480 (Minn.1993) (quoting *In re Jones,* 383 N.W.2d 303, 307 (Minn.1986)). We are left with no alternative.

Disbarment ordered.