In re Petition for DISCIPLINARY AC-
TION AGAINST Michael H. RANDALL,
an Attorney at Law of the State of
Minnesota.

No. C3–96–721.

Supreme Court of Minnesota.

May 8, 1997.

Michael H. Randall, Brooklyn Center, for appellant.

Candace M. Hojan, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for respondent.

## OPINION

### PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility brought a disciplinary complaint against respondent Michael H. Randall alleging, among other misconduct, that Randall misappropriated client funds; charged clients for work he did not perform; and engaged in dishonesty to cover up his misconduct. A hearing was held before a court-appointed referee. The referee issued findings of fact and conclusions of law, and recommended disbarment, as well as imposition of costs and attorney fees. Because neither the director nor Randall ordered a transcript of the hearing within 10 days of the filing of the referee's findings, the referee's findings are conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). The director requests that this court follow the referee's recommendations.

This court set this case on for a hearing to determine the appropriate discipline. Randall failed to file a brief, but appeared at the hearing before this court. At the hearing, Randall admitted that the referee's findings were "basically accurate" and that his disputes with the findings were minor.

The director contends that Randall engaged in professional misconduct in several matters. In the first matter, Randall represented Robert Rapacke in the dissolution of his marriage. A district court judge issued an order for an amended judgment and decree dated February 12, 1993. Randall advised Rapacke that he would bring a motion for reconsideration before the district court and would appeal to the court of appeals. Randall agreed to handle the motion to reconsider for $342 and the appeal for $1,380. Rapacke paid Randall $1,050 towards these fees. Rapacke also paid Randall $500 to purchase an appeal bond, but Randall cashed the $500 check and misappropriated the proceeds.

Randall gave Rapacke a copy of a brief purportedly filed with the court of appeals. The brief was neither filed with the court of appeals nor served on opposing counsel. Rapacke called Randall several times in the summer of 1993 to learn the status of the appeal. In September 1993, Randall lied to Rapacke, stating that the appeal had been denied. Randall subsequently wrote a letter to Rapacke, further misrepresenting that the court of appeals "simply rejected" the appeal without giving reasons for doing so. When Rapacke requested a copy of the court of appeals opinion, Randall failed to respond. In January 1994, Rapacke learned from the Clerk of Appellate Courts that no appeal had been filed. The referee found that Randall's conduct in collecting fees for taking the appeal, in misappropriating the $500 for the appellate bond, in making misrepresentations to Rapacke about the status of his case, and in submitting a false brief to Rapacke violated Minn. R. Prof. Conduct 1.4, 1.5, 1.15(a), 4.1, and 8.4(c).

When Rapacke learned that Randall had never filed an appeal, he filed a complaint with the director. In his written response to this complaint, Randall informed the district ethics committee (DEC) investigator that he had performed the appellate work and believed that the appeal had been served and filed. Randall asserted that he had hired Darell Johnson "to serve * * * and to file the appeal." Randall appeared before the

DEC panel and asserted that Johnson told him the appeal had been either denied or dismissed. He had no explanation for why he believed Johnson in light of the fact that he never received an order from the court of appeals. Moreover, Randall was unable to explain why the file number on his purported brief was from a 1990 case, while Randall alleged that the brief had been filed in 1993.

In a sworn statement to the director, Randall asserted that he had prepared a notice of appeal and statement of the case and had Johnson serve them, but he never received any paperwork from the court of appeals or from opposing counsel. He stated that when Rapacke called him to inquire about the status of the appeal, he sent Johnson to the court of appeals to check on it. Randall stated that Johnson told him the court of appeals had issued a "very short denial" and that Randall conveyed this information to Rapacke. Randall further asserted that Johnson never gave Randall a copy of the order and Randall never contacted the court of appeals himself until Rapacke informed him the case had never been appealed.

At the hearing before the referee, Randall admitted that he knew the brief had not been filed and admitted that he misappropriated the $500 for the appeal bond, but continued to assert that he attempted to file a notice of appeal and statement of the case. The referee found that Randall's "version of events [was] not credible." The referee found that Randall made false statements to the DEC investigator, the DEC panel, and the director. Some of these misrepresentations were made by Randall while he was under oath. The referee also found that Randall submitted false documents to a client, the DEC investigator, and the director. The false and altered documents included an appellate brief, a notice of appeal, a statement of the case, three affidavits of service, an affidavit of Johnson (in which Johnson accepted blame for the failure to perfect Rapacke's appeal), a time sheet, three check stubs, and five receipts. The referee found that Randall's conduct in making misrepresentations and submitting false and altered documents violated Minn. R. Prof. Conduct 8.1(a)(1) and 8.4(c).

In the second matter, Randall represented Thomas Beier in an action regarding the dissolution of his marriage. When placing the settlement on the record, Randall stated that a future review hearing should be scheduled concerning the status of the settlement. Opposing counsel subsequently advised Randall that he had scheduled a July 20, 1995, hearing to seek relief from the settlement and served Randall with motion papers for the hearing. On June 8, 1995, Beier informed Randall that the settlement was not working and that further court involvement was necessary. Although Beier gave Randall all of the information necessary to respond to the motion, Randall failed to prepare any documents until after the deadline for their submission. The referee found that Randall failed to exercise due diligence in violation of Minn. R. Prof. Conduct 1.3.

After the hearing, Beier's ex-wife was ordered to pay Beier $11,500. On July 27, 1995, opposing counsel gave Randall a check for $11,500, which Randall deposited into his business account. Randall prepared a bill for Beier, kept $4,362.50, and wrote Beier a check for the remainder. The referee found that Randall failed to advise Beier that he was taking his fee out of the funds and had not obtained Beier's consent to do so. The referee found that Randall failed to deposit client funds into his trust account in violation of Minn. R. Prof. Conduct 1.15(a) and engaged in conduct involving dishonesty, fraud, or misrepresentation in violation of Minn. R. Prof. Conduct 8.4(c).

On August 15, 1995, the director notified Randall that Beier had filed a complaint. The director's notice of investigation directed Randall to respond in writing and to provide all client files, trust account records, and business account records relating to Beier within 14 days. Randall failed to comply as directed, but eventually provided a response and the client files on September 21, 1995. The referee found that Randall failed to respond in a timely manner to the director's demand for information in violation of Minn. R. Prof. Conduct 8.1(a)(3) and Rule 25, RLPR.

In a third matter, Randall represented Earl Patterson in a personal injury matter in which they agreed to a contingent fee agreement. When the wage loss portion of the case was settled, Randall received a check from the insurance company for $11,500, endorsed Patterson's name to the check, and deposited it into his trust account. Randall then wrote checks to himself, Patterson, and Patterson's former counsel. Randall wrote a letter to Patterson, explaining that he had deducted his fee and enclosing a check for the remainder. Patterson disputes the amount of Randall's fee. The referee found that Randall failed to reduce the agreement to writing in violation of Minn. R. Prof. Conduct 1.5(c) and endorsed the check in violation of Minn. R. Prof. Conduct 8.4(c).

In the fourth matter, Randall represented a construction contractor at a conciliation court appeal concerning a construction dispute. The case was settled and a stipulation was read into the record. As part of the settlement, the unrepresented opposing party, Ho Tran, agreed to pay $3,500 in exchange for the contractor completing work on the construction project. The money was to be held in Randall's trust account until an inspector selected by the parties had inspected the construction site and determined that the work had been completed. When the inspector determined that the work had been completed, Randall would release the $3,500 to the contractor. Pursuant to the settlement, Tran made out a check to the "Michael Randall Trust." Instead of depositing the check into his trust account, Randall kept the $3,500 for himself.

In addition, Randall suggested that James Milsap be the inspector, without disclosing, either to Tran or to the court, that Milsap was a friend of the contractor and was not a licensed inspector. On April 18, 1995, Milsap provided Randall with an inspection report indicating that the construction work had been completed. On April 26, 1995, Tran wrote to Randall advising Randall that a city employee had "red tagged" the project and directing Randall not to release the money to the contractor. Randall wrote to Tran on May 2, 1995, falsely stating that he had already released the funds to the contractor,

when, in fact, he had taken the money. With the letter, Randall attached a false receipt, purportedly from the contractor. In response to the director's request for documentation in the Tran matter, Randall provided a false inspection report dated September 21, 1994 (the only true inspection report was dated April 1995). The referee found that Randall's conduct in the Tran matter violated Minn. R. Prof. Conduct 1.7(b), 3.4(b), and 8.4(c)-(d).

In the final matter, the director notified Randall that the director had received a notice of a $19,000 trust account overdraft from Norwest Bank and requested a written explanation. After Randall failed to respond, the director made a second written request and advised Randall that failure to respond could result in the opening of a disciplinary file. Randall failed to comply and the director opened a disciplinary file. The director notified Randall that there would be an investigation of the trust account overdraft and requested a written explanation and trust account books and records within 14 days. Randall did not respond. The director then subpoenaed Norwest Bank. While Randall was present, the director deposed a Norwest Bank employee and obtained the bank's records concerning the trust account and overdraft. Randall produced his trust account bank statements and cancelled checks on the day of the deposition, but he failed to produce other requested records.

In July 1995, the director asked Randall to produce his 1993 tax returns, trust account records for 1993 and 1994, and names and addresses of persons mentioned in his sworn statement. Randall requested additional time to produce his trust account records. On August 25, 1995, the director renewed her earlier requests for documents, and also asked for two original client files. On September 20, 1995, Randall produced some of the trust account records, his 1993 tax returns, and two client files. Randall did not produce other trust account records or witness identifications. The referee concluded that Randall's conduct in failing to timely respond to the director's investigation and to timely produce requested trust account rec-

ords violated Minn. R. Prof. Conduct 8.1(a)(3) and Rule 25, RLPR.

## I.

The clear and convincing evidence standard applies in attorney discipline proceedings and a referee's findings of fact will not be set aside unless clearly erroneous or not supported by the evidence. *In re La-Chapelle*, 491 N.W.2d 17, 20 (Minn.1992). Because Randall did not order a transcript of the hearing within 10 days of the filing of the referee's findings, the referee's findings are conclusive. Rule 14(e), RLPR. The only issue in this case is what level of discipline is appropriate.

The referee recommended that Randall be disbarred. The referee's recommendation is entitled to "great weight," but this court has the final responsibility for determining whether discipline shall be imposed. *Id.* at 21. In determining whether discipline is appropriate, this court generally considers the number of clients harmed, the extent of the clients' injuries, prior misconduct and discipline, and any mitigating circumstances. *In re Wyant*, 533 N.W.2d 397, 401 (Minn.1995) (citation omitted). "Although this court strives to be consistent with its sanctions, prior disciplinary case law is helpful only as an analogy; the facts of each case independently dictate the appropriate discipline." *Id.*

"Disbarment is the usual discipline for attorney misappropriation of client funds except in instances when the attorney presents clear and convincing evidence of substantial mitigating circumstances which show that the attorney did not intentionally convert the funds." *LaChapelle*, 491 N.W.2d at 21; *see also In re Weems*, 540 N.W.2d 305, 308 (Minn.1995). "Misappropriation occurs whenever funds belonging to a client are not kept in trust and are used for any purpose other than that specified by the client." *La-Chapelle*, 491 N.W.2d at 20 (quotation omitted); *see also In re Swerine*, 513 N.W.2d 463, 466 (Minn.1994) (disbarment warranted when attorney gains client funds by forging the client's signature on settlement checks without authorization).

Randall's misappropriation supports disbarment. The referee found that Randall misappropriated $500 from Rapacke, charged Rapacke for services he did not perform, misappropriated $3,500 from Tran, failed to deposit Beier's settlement into his trust account, and forged Patterson's name on a settlement check to pay himself his alleged fee from the proceeds. Randall did not present any evidence of mitigating circumstances.

Randall's dishonesty after his misappropriation further supports disbarment. *See La-Chapelle*, 491 N.W.2d at 21; *see also In re Maresh*, 539 N.W.2d 247, 248 (Minn.1995) (disbarment appropriate when attorney misappropriated funds from three clients, concealed misappropriation, contrived a series of explanations, and failed to maintain proper trust account books); *Swerine*, 513 N.W.2d at 466 (disbarment appropriate when attorney misappropriated client funds, forged client signatures, made misrepresentations to clients, and lied in sworn statement at disciplinary proceeding); *In re Parks*, 396 N.W.2d 560, 563 (Minn.1986) (fraudulent concealment of misappropriation warrants severe discipline and supports disbarment). Randall made misrepresentations to Rapacke and Tran, as well as to the DEC investigator, DEC panel, and director to cover up multiple instances of misappropriation. Randall made misrepresentations to Rapacke and Tran concerning the status of their cases and to hide the fact that he had misappropriated their money. His misrepresentations to the director at the taking of his two statements occurred while he was under oath. Randall also submitted false and altered documents to the director.

Randall gave a variety of improbable excuses, made misrepresentations, and submitted false documents to the disciplinary authorities. A close examination of the Rapacke matter, in particular, demonstrates Randall's ingenuity in continuing to cover up his misconduct. In response to Rapacke's complaint, Randall asserted that he had believed that he had appealed Rapacke's case and that he had informed Rapacke that he had lost the appeal only because Johnson told him so. He professed

that he was "surprised and concerned" when he received Rapacke's complaint.

At the DEC panel hearing, panel members questioned Randall about his story. At that time, Randall did not have a specific recollection of having written the appeal, knew only that he filed a brief, seemed to have no recollection of whether he filed a notice of appeal or statement of the case, and did not know if the appeal had been dismissed or denied. The only document the panel had at that point was the brief Randall had given Rapacke. At the hearing, Randall had no idea why he used a file number from 1990 on his brief that was purportedly filed in 1993. Randall stated that he had advised Rapacke about the possibility of bringing a petition for review to the supreme court, although he did not know when the court of appeals opinion was issued and did not know the timing requirements for bringing a petition for review.

When he appeared for his first sworn statement, Randall had corrected some of the problems with his prior explanation, in that he now produced, for the first time, a notice of appeal and statement of the case. Randall stated that he used an old file number from a previous appeal because the previous case had been remanded. In attempting to discover whether documents were forged, the director questioned a date from a notary stamp on an affidavit that Randall had notarized. The director asked why the notary stamp Randall had used had an expiration date in the year 2000, when the stamp he would have possessed at that time expired in 1993, Randall responded that he must have purchased a new notary stamp. When the director told Randall the notary stamp with the expiration date in 2000 had not been distributed until several months after Randall had allegedly used it on the affidavit, Randall explained that he might have notarized the original affidavit, then noticed several months later that he had not stamped it, and then stamped his copy. Randall subsequently produced a false check stub purportedly for the purchase of the notary stamp in an apparent attempt to substantiate his story.

■ Finally, Randall's violations of other rules is also of concern to this court. *See LaChapelle*, 491 N.W.2d at 21. The referee concluded that Randall failed to enter into a written contingency agreement in the Patterson matter and failed to exercise due diligence in the Beier matter. The referee further concluded that Randall failed to cooperate with the disciplinary authorities in that he failed to respond to the director's request for information in a timely manner and failed to produce trust account books and records. Failure to cooperate with the disciplinary process is "a serious offense in itself." *In re Walker*, 461 N.W.2d 219, 223 (Minn.1990).

Based upon the findings of the referee, we conclude that disbarment is the only appropriate discipline.

## II.

■ In addition to disbarment, the referee also recommended that Randall should be ordered to pay costs and disbursements, attorney fees, and $242.15 in deposition costs.

■ Reasonable attorney fees may be imposed when an attorney has acted in bad faith in disciplinary proceedings. Rule 15(a)(8), RLPR. The record in this case demonstrates that the director spent a substantial amount of time attempting to verify Randall's changing story. For instance, the director had the Bureau of Criminal Apprehension (BCA) examine some of the documents Randall provided and used the BCA report to impeach Randall's testimony. It was this report that caused Randall to admit to altering or falsifying some of the documents. Attorney fees may be assessed as a deterrent to deliberate misrepresentations to the director. *In re Benson*, 431 N.W.2d 120, 125 (Minn.1988). However, the imposition of attorney fees must be considered carefully, especially when the sanction imposed will limit the attorney's ability to earn income. *See id.* Therefore, we have considered the financial impact of our decision to disbar Randall in determining the amount of attorney fees, costs, and disbursements awarded.

Based upon the findings of the referee, disbarment is the only appropriate discipline. Accordingly, we order that:

1. Respondent Michael H. Randall is hereby disbarred from the practice of law pursuant to Rule 15, RLPR.

2. Respondent shall comply with the notice provisions and other requirements of Rule 26, RLPR.

3. Respondent shall pay reasonable attorney fees of $500.00 to the director pursuant to Rule 15(a)(8), RLPR.

4. Respondent shall pay total costs and disbursements of $242.15 to the director pursuant to Rule 24, RLPR.

So ordered.