In re PETITION FOR DISCIPLINARY ACTION AGAINST Brian Todd PIERCE, a Minnesota Attorney, Registration No. 290038.

No. A05–847.

Supreme Court of Minnesota.

Dec. 1, 2005.

Kenneth L. Jorgensen, Director, Timothy Michael Burke, Senior Assistant Director, St. Paul, MN, for LPRB.

Brian Todd Pierce, Lakefield MN, for Respondent.

OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against respondent Brian Todd Pierce in May 2005 setting forth four counts of professional misconduct.[1] The petition alleges that Pierce misappropriated client funds, made a misleading statement regarding the misappropriation, issued numerous insufficient funds checks, repeatedly failed to appear in court on client matters, and failed to cooperate with the disciplinary investigation. On May 23, 2005, the Director filed a supplementary petition for disciplinary action against Pierce, alleging neglect, an improper business transaction with a client, failure to obey a court order and court rules, failure to pay a court reporter, failure to appear in court, and failure to cooperate with opposing counsel.

In May 2005, in response to a motion by the Director, we temporarily suspended Pierce from the practice of law pending final disposition of this disciplinary proceeding. After Pierce failed to answer the petition for disciplinary action, we granted the Director's motion for summary relief and deemed the allegations of the petition admitted pursuant to Rule 13(b) of the Rules on Lawyers Professional Responsibility (RLPR).[2] In light of the admitted allegations of misappropriation, misrepresentation, neglect, noncooperation with disciplinary authorities, and other violations, Pierce is hereby disbarred.

The violations recounted in the petition occurred during the period from De-

---

1. Pierce was admitted to practice law in Minnesota in 1999.

2. Rule 13(b), RLPR, provides: "If the respondent fails to file an answer within the time provided or any extension of time this Court may grant, the petition's allegations shall be deemed admitted and this Court may proceed under Rule 15."

cember 2003 through March 2005. First, in or about June 2003, L.F. retained Pierce to represent her in a marital dissolution. On or about December 15, 2003, L.F. signed a retainer agreement at Pierce's request. In January 2004, L.F. and her husband signed a marital termination agreement, which provided that L.F. would receive $30,000 from her husband in two separate installments of $15,000 each. The settlement was contingent on L.F.'s withdrawal of her restitution and personal injury claims against her husband.

In mid-January 2004, Pierce received the first check for $15,000 from L.F.'s husband's counsel. Pierce deposited the check in his client trust account and disbursed $10,000, one-third of the entire settlement amount, to himself pursuant to the retainer agreement.[3] Pierce disbursed the remaining $5,000 to L.F. At the end of January 2004, Pierce received the second payment of $15,000, again made payable to his client trust account, and deposited the check. Pierce did not disburse any of the second installment to L.F., despite the fact that she was entitled to the full amount. Instead, he disbursed the $15,000 to himself for his personal use. In May and June 2004, Pierce's law partner made payments totaling $15,000 to L.F. to compensate her for the funds misappropriated by Pierce. Neither Pierce nor his partner informed L.F. of the misappropriation. Pierce's misappropriation of L.F.'s settlement funds violated Minn. R. Prof. Conduct 1.15(d)(1), 1.15(c)(4), and 8.4(c).[4]

The second count of misconduct relates to Pierce's response to the Director's disciplinary investigation of Pierce's handling of the L.F. matter. In January 2005, the Director mailed a notice of investigation to Pierce regarding the L.F. matter. The notice requested a written response and copies of all documents relating to Pierce's handling of L.F.'s funds. Pierce did not respond to the notice. On January 27 and February 4, the Director mailed two additional requests for information to Pierce. On February 7, the Director's Office called Pierce and left a telephone message, which Pierce did not return. Pierce did not respond to the Director's inquiries until February 9. In his response, Pierce failed to address his handling of L.F.'s funds. Instead of providing trust account statements for 2004, when L.F.'s funds were received and disbursed, Pierce provided statements for 2003 and falsely stated: "As you can see, L.F. had no funds in the trust account."

The Director requested Pierce to attend a meeting at the Director's Office on February 17, 2005. Instead of appearing, Pierce faxed a letter to the Director on February 17 stating that the lawyer he was retaining was out of town and that his counsel would contact the Director. The Director rescheduled the meeting for March 3. Pierce failed to appear for the March 3 meeting. On March 9, Pierce's secretary contacted the Director's Office and arranged a meeting between the Director, Pierce, and Pierce's counsel at the

---

**3.** The retainer agreement appears to have provided for Pierce to receive a specified fraction, one-third, of any settlement recovered.

**4.** Minn. R. Prof. Conduct 1.15(d)(1) states that a lawyer shall not enter into an arrangement in a domestic relations matter for a fee that is "contingent upon securing the divorce or upon the amount of alimony or support, or property settlement in lieu there of." Minn.

R. Prof. Conduct 1.15(c)(4) states: "A lawyer shall * * * promptly pay or deliver to the client * * * the funds, securities, or other properties in the possession of the lawyer which the client * * * is entitled to receive." Minn. R. Prof. Conduct 8.4(c) states: "It is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit or misrepresentation * * *."

Director's Office on March 15. At the March 15 meeting, Pierce admitted to misappropriating $15,000 from L.F. Subsequently, Pierce failed to respond to the petition for disciplinary action filed by the Director, and did not file a brief in this matter. Pierce's misrepresentation to the Director's Office and his pattern of non-cooperation with the disciplinary investigation violated Minn. R. Prof. Conduct 8.1(a)(3) and 8.4(c), and Rule 25, RLPR.[5]

The third count of misconduct arose out of Pierce's issuance of numerous insufficient funds checks in 2004. In December 2004, Pierce pled guilty to violating Minn.Stat. § 609.535 (2004), which prohibits the issuance of a check that "at the time of issuance, the issuer intends shall not be paid." Pierce's conviction stemmed from the issuance of a check drawn on his law office business account in June 2004. In May and June 2004, Pierce issued twenty-two additional insufficient funds checks. Pierce's issuance of numerous insufficient funds checks violated Minn. R. Prof. Conduct 8.4(b) and 8.4(c).[6]

The fourth count of misconduct arose out of Pierce's repeated failure to appear in court on behalf of several clients throughout 2004. Pierce failed to attend an April 26 hearing or request a continuance on behalf of a client facing criminal charges. On September 27, Pierce failed to appear at a hearing for a different client also facing criminal charges and instead telephoned to request a continuance. The hearing was rescheduled for October 4, but Pierce failed to appear for the rescheduled hearing. Instead, Pierce's law partner appeared and requested a continuance, and the matter was rescheduled. Pierce again failed to appear for the rescheduled hearing. Pierce's secretary telephoned the court on the day of the hearing and falsely informed the court that Pierce was out of the state. Finally, Pierce failed to appear at an October 19 hearing for a third client facing criminal charges. Pierce's failure to appear at numerous court hearings violated Minn. R. Prof. Conduct 1.3, 3.2, 3.4(c), and 8.4(d).[7]

The Director's supplementary petition presents additional facts, which are also deemed admitted pursuant to Rule 13(b), RLPR, because Pierce did not answer the supplementary petition within the time allotted for response. The following facts are recounted in the supplementary petition. S.A. retained Pierce to represent him in a criminal conviction appeal in July

---

5. Minn. R. Prof. Conduct 8.1(a)(3) provides that an attorney undergoing a disciplinary investigation shall not "knowingly fail to respond to * * * [a lawful] demand for information." Rule 25, RLPR, provides that a lawyer who is the subject of a disciplinary investigation has a duty to cooperate with the Director's Office by complying with "reasonable requests" for documents and written explanations and by appearing at hearings or conferences scheduled by the Director's Office. Rule 25, RLPR further provides that a violation of the rule is unprofessional conduct and constitutes grounds for discipline.

6. Minn. R. Prof. Conduct 8.4(b) states "[i]t is professional misconduct for a lawyer to * * * commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

7. Minn. R. Prof. Conduct 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 3.2 provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Minn. R. Prof. Conduct 3.4(c) states: "A lawyer shall not * * * knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists * * *." Minn. R. Prof. Conduct 8.4(d) states: "It is professional misconduct for a lawyer to * * * engage in conduct that is prejudicial to the administration of justice * * *."

2004. Pierce requested a $5,000 flat fee. S.A. paid Pierce $1,700 in cash and gave Pierce title to S.A.'s Chevrolet automobile in satisfaction of the remaining $3,300. Pierce did not provide S.A. with a written explanation of the terms of the title transfer, did not seek S.A.'s written consent to the transaction, and did not advise S.A. in writing to consider consulting with independent counsel.

Pierce filed a notice of appeal and statement of the case in the S.A. matter, but failed to order a transcript within the prescribed 30 days and failed to file the required certificate as to transcript. Consequently, the court ordered Pierce to file a certificate as to transcript and warned that sanctions would be imposed if he failed to do so. Pierce then filed the certificate and agreed with the court reporter on compensation for the transcription. Pierce, however, never paid for the transcript.

Pierce failed to file or serve a brief in the S.A. matter by the March 10, 2005, deadline. Subsequently, the court of appeals ordered Pierce to file a brief by March 28, 2005, and advised Pierce that failure to do so could result in sanctions, including dismissal of the appeal. Pierce did not serve or file a brief by March 28. Moreover, Pierce never informed S.A. of the order. Because of Pierce's failure to file a brief, the court dismissed the appeal but granted Pierce 10 days to file a motion to reinstate it. Pierce did not file a motion for reinstatement and failed to inform S.A. of the dismissal.

Pursuant to his sentencing order, S.A. was required to report to prison when his appeal was dismissed. He failed to do so, however, because Pierce never told him of the dismissal. As a result, the prosecutor served Pierce with a motion for an order for S.A. to report to prison. Pierce never informed his client of the motion, nor did Pierce respond to it. On April 26, the court ordered S.A. to report to the sheriff by April 29. Pierce did not tell S.A. of the order. S.A. did not report to the sheriff and consequently was arrested. Pierce's conduct in the S.A. matter violated Minn. R. Prof. Conduct 1.3, 1.4, 1.8(a), 3.2, 3.4(c), and 8.4(d).[8]

▪ In addition to the S.A. matter, Pierce also failed to attend a May 3, 2005, hearing in a CHIPS matter for a different client, T.B. Pierce failed to respond to several letters from opposing counsel in T.B.'s related child custody matter. Pierce's conduct in the T.B. matter violated Minn. R. Prof. Conduct 1.3, 3.4(c), and 8.4(d).

▪ Because the Director's allegations are deemed admitted, the only issue before us is the appropriate discipline to be imposed. In considering a petition for attorney discipline, this court has the ultimate responsibility for determining the appropriate sanction. *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004). "The purposes of disciplinary sanctions for professional misconduct are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Id.*

---

8. Minn. R. Prof. Conduct 1.4 provides that a lawyer shall "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Rule 1.4 further states: "A lawyer shall explain a matter to the extent reasonably necessary to permit a client to make informed decisions regarding the representation." Minn. R. Prof. Conduct 1.8(a) provides that a lawyer shall not enter into a business transaction with a client unless 1) the client is notified in writing that independent counsel should be considered and is given the opportunity to seek such advice; 2) the terms are fair and reasonable and are disclosed to the client in writing; and 3) the client consents in a writing separate from the transaction documents.

(citing *In re Daffer*, 344 N.W.2d 382, 385 (Minn.1984)).

We consider four factors in determining the appropriate sanction: "(1) the nature of the misconduct; (2) the cumulative weight of the violations of the rules of professional conduct; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* Appropriate sanctions are determined on a case-by-case basis after considering both aggravating and mitigating circumstances. *In re Wentzell*, 656 N.W.2d 402, 408 (Minn.2003). We look to similar cases for guidance in setting the proper discipline. *In re Thedens*, 557 N.W.2d 344, 347 (Minn.1997).

The Director recommends disbarment in this case because of the serious nature of the violations. The Director argues that disbarment is necessary to protect the public from an attorney who has committed several intentional acts of dishonesty, including misappropriating $15,000 of client funds and lying to conceal the theft. The Director contends that failure to disbar an attorney who intentionally misappropriated client funds, neglected numerous client matters, and willfully failed to cooperate with a disciplinary investigation would undermine the deterrence value of attorney discipline.

We have generally disbarred attorneys who have misappropriated client funds. *See, e.g., In re Vaught*, 693 N.W.2d 886 (Minn.2005) (disbarring attorney who misappropriated client funds and who had a prior record of discipline for similar misconduct); *In re Keller*, 656 N.W.2d 398 (Minn.2003) (disbarring attorney who misappropriated $15,000 in client funds); *In re Swerine*, 513 N.W.2d 463 (Minn.1994) (disbarring attorney who misappropriated funds from four clients and made misrepresentations to the clients and the Director to conceal the theft); *In re LaChapelle*, 491 N.W.2d 17 (Minn.1992) (disbarring attorney who misappropriated more than $16,000 of client funds, failed to maintain proper trust account records, and falsely certified that his trust account books were in order). The only exception is "instances when the attorney presents clear and convincing evidence of substantial mitigating circumstances which show that the attorney did not intentionally convert the funds." *In re LaChapelle*, 491 N.W.2d at 21. In this case, Pierce has failed to provide any evidence that his misappropriation was unintentional.

Furthermore, Pierce's affirmative attempt to conceal his misappropriation from the Director and his lack of cooperation with the disciplinary investigation is professional misconduct separate from his underlying violations. An attorney is under an ethical obligation to cooperate in the investigation and resolution of complaints of unprofessional conduct. Minn. R. Prof. Conduct 8.1; Rule 25, RLPR; *In re Cartwright*, 282 N.W.2d 548, 551–52 (Minn.1979). "Refusal to cooperate with disciplinary authorities is itself serious misconduct and warrants disciplinary action." *In re Flanery*, 431 N.W.2d 115, 119 (Minn.1988). In cases where attorneys have not been forthright with disciplinary authorities, our court has stated: "We should not hesitate to impose severe discipline when a lawyer demonstrates a lack of truthfulness and candor to the officers of the judicial system." *In re LaChapelle*, 491 N.W.2d at 21. On numerous occasions, we have disbarred attorneys who have made intentional misrepresentations during a disciplinary investigation to conceal their prior misconduct. *See, e.g., In re Swerine*, 513 N.W.2d at 466–67; *In re LaChapelle*, 491 N.W.2d at 19.

In addition, Pierce's failure to appear in court on behalf of clients on several occasions is serious misconduct

that warrants sanctions. In past cases, we have concluded that failure to appear on behalf of a client constitutes neglect in violation of Minn. R. Prof. Conduct 1.3. *In re Westby,* 639 N.W.2d 358, 367 (Minn. 2002). Disbarment or indefinite suspension is the typical sanction for repeated instances of client neglect. *Id.* at 371; *In re Flanery,* 431 N.W.2d at 118. In deciding the appropriate discipline for neglect, we consider the number of clients affected and the degree of harm caused to the clients by the neglect. *In re Flanery,* 431 N.W.2d at 118. "In cases where this court has ordered indefinite suspension for neglect of client matters, the attorneys either presented mitigating circumstances for the court to consider or entered into stipulations or both." *Id.* Pierce has presented no mitigating factors, nor has he entered into a stipulation with the Director's Office. Further, in the S.A. matter, Pierce's conduct not only constituted serious neglect but also violated Minn. R. Prof. Conduct 1.4, requiring that an attorney keep clients "reasonably informed" about the status of their cases.

Pierce's issuance of numerous insufficient funds checks violated Minn. R. Prof. Conduct 8.4(c), prohibiting conduct involving fraud or deceit. *See In re Pokorny,* 453 N.W.2d 345, 347 (Minn.1990). We have suspended or disbarred attorneys who have issued insufficient funds checks in conjunction with other misconduct. *See, e.g., id.* at 349 (suspending attorney indefinitely for client neglect, issuance of one insufficient funds check, and failure to pay two judgments for law-related debts); *In re Gubbins,* 380 N.W.2d 810, 811–12 (Minn. 1986) (suspending attorney for four months for issuing 217 insufficient funds checks, commingling funds, and failing to keep proper trust account records); *In re Larson,* 324 N.W.2d 656, 658–59 (Minn. 1982) (disbarring attorney who issued numerous insufficient funds checks, misap-

propriated client funds, and failed to cooperate with the disciplinary investigation).

■ We consider the presence of aggravating or mitigating circumstances in determining the proper discipline. *In re Wentzell,* 656 N.W.2d at 408. There are several aggravating circumstances in this case. First, Pierce's failure to make restitution to L.F. is an aggravating factor. *See In re Swerine,* 513 N.W.2d at 467. Second, Pierce's failure to cooperate with the disciplinary investigation is an aggravating factor because it demonstrates a disregard for the seriousness of the disciplinary process and for his ethical obligations as an attorney. *See In re Westby,* 639 N.W.2d at 370–71; *In re Engel,* 538 N.W.2d 906, 907 (Minn.1995).

■ Pierce has provided no evidence of mitigating circumstances. The fact that an attorney is relatively new to the profession is not a mitigating factor where serious misconduct, such as the misappropriation of client funds, is present. *See In re Leon,* 524 N.W.2d 723, 725 (Minn.1994). Further, the absence of prior disciplinary history does not mitigate when the violation is severe. *See In re Wentzell,* 656 N.W.2d at 409. Given the serious nature of the misconduct and the absence of any mitigating circumstances, we hold that disbarment is the appropriate discipline is this case.

So ordered.

BLATZ, C.J., took no part in the consideration or decision of this matter.