In re Petition for DISCIPLINARY ACTION AGAINST Stephen Vincent GRIGSBY, a Minnesota Attorney, Registration No. 291973.

No. A07–688.

Supreme Court of Minnesota.

April 16, 2009.

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, for petitioner Office of Lawyers Professional Responsibility.

Stephen Vincent Grigsby, Princeton, pro se respondent.

# OPINION

PER CURIAM.

The Office of Lawyers Professional Responsibility charged respondent Stephen Vincent Grigsby with failure to file individual income tax returns, failure to report income, failure to maintain books and records, failure to use written retainer agreements, making misrepresentations to the Director of the Office of Lawyers Professional Responsibility, and noncooperation with the Director. The referee assigned to hear the case concluded that Grigsby violated the Minnesota Rules of Professional Conduct and recommended that Grigsby be suspended for 60 days. The Director appealed the referee's recommendation of a 60–day suspension, arguing for suspension for a minimum of 12 months. Grigsby challenged the referee's recommended discipline as inconsistent with the factual findings and argued for a 30–day suspension. After briefs were filed with this court, Grigsby's lawyer withdrew from the case. We briefly continued oral arguments in the matter to allow Grigsby to obtain counsel. After hearing oral argument from the parties, at which Grigsby appeared pro se, we remanded the matter to the referee for additional findings of fact concerning the redaction of a particular bank statement during the Director's investigation. The referee filed amended findings of fact and conclusions of law but did not change his recommendation of a 60–day suspension. We adopt the referee's recommendation and suspend Grigsby for 60 days.

Grigsby was admitted to practice law in Minnesota in 1999 and since 2000 has been a sole practitioner. Grigsby admits that he had sufficient income in 1999, 2000, 2001, and 2002 to require him to file feder-

al individual income tax returns. *See* 26 U.S.C. § 6012(a)(1)(A) (2000). Nevertheless, Grigsby did not file his federal tax returns for those years until April 2004, after the Director requested copies. Grigsby's 2002 federal individual tax return reported gross receipts of $18,068, although the referee found that Grigsby advised the Director that he received nonrefundable client retainers during 2002 totaling $47,100. Grigsby's 2003 individual tax return reported gross receipts of nearly $78,000, although the referee found Grigsby advised the Director that he received client retainers during 2003 totaling $127,050.

During 2002 and 2003, Grigsby requested and received retainers for the representation of clients in pending criminal matters. On three occasions pertinent here, the retainers were deposited into either Grigsby's personal checking account or into the business checking account of attorney K.B., from whom Grigsby leased office space, rather than into a client trust account. *See* Minn. R. Prof. Conduct 1.15(c)(5) (requiring that fees received in advance of the legal services being performed be deposited into a trust account and withdrawn as earned, unless the lawyer and the client have entered into a written fee agreement making the advance payment nonrefundable). In none of the representations was there a written fee agreement, and Grigsby kept few, if any, records of the receipts. All three clients complained to the Director about Grigsby's representation.

In particular, around March 2002, Grigsby was retained to represent client M in a pending criminal matter. Grigsby requested a $10,000 retainer, which was deposited by wire transfer into the business checking account of attorney K.B. Grigsby did not transfer the retainer to a client trust account. Client M pleaded guilty in May 2002. In November 2002, Grigsby refunded $2,000 of the retainer to M's sister-in-law.

Client M complained to the Director of the Office of Lawyers Professional Responsibility, although the nature of the complaint is not apparent from this record. In responding to the Director's investigation of the complaint, Grigsby was represented by attorney Edward Kautzer. In April 2003, the Director's office inquired of Kautzer, "Did Mr. Grigsby receive $10,000 to represent [client M]?" and asked for "all documents that refer or relate to [Grigsby's response]." Kautzer responded on Grigsby's behalf that "the only documents that exist would be that resulted from the wire transfer of the money." In a second letter, Kautzer further responded that Grigsby had "deposited the $10,000 in his business checking account at Wells Fargo." Kautzer enclosed with that second letter a bank statement showing receipt of a $10,000 wire transfer. However, all other information had been redacted from the bank statement, including the identity of the account holder.

In reality, the retainer for representation of client M had been wired to the business account of attorney K.B., because at the time Grigsby had neither a client trust account nor a business account for his practice. The referee found that Kautzer's statement that Grigsby "had deposited the $10,000 in his business checking account" was false. Nevertheless, when the Director demanded production of "the *original* bank statements, check registers, and cancelled checks sufficient to establish the receipt of the claimed earned fee payment for the representation of [client M]," Kautzer responded that he was "in the process of locating those documents." After another month went by, Kautzer wrote to the Director that Grigsby "has no other documents which are responsive to" the

Director's request. Kautzer indicated that Grigsby "would be happy to" sign a release so that the Director could obtain the requested information directly from the bank, although the effect of a release signed by Grigsby, who was not the accountholder, is unclear. The referee originally found that Grigsby's claim to have deposited the retainer in his business checking account, coupled with the failure to disclose that the accountholder was actually K.B., "was misleading, for it led to the belief that the bank statement was for [Grigsby's] account."

Not until April 2004, nearly nine months after the production of the redacted statement from the business account of attorney K.B., did Kautzer tell the Director that the retainer for the representation of client M had been wired into K.B.'s account "as Mr. Grigsby did not have his own account at that time." But Kautzer did not produce, with that letter, a copy of the unredacted bank statement for K.B.'s business account showing receipt of the wire transfer.

There was a similar lack of candor with respect to other requests for information. In November 2003, the Director requested information and documents concerning Grigsby's representation of Client A, for which Grigsby had been paid at least half of a $20,000 retainer. The Director asked Grigsby to identify the account into which the retainer had been deposited and to provide documentation sufficient to establish receipt. Kautzer, on Grigsby's behalf, told the Director that Grigsby "does not believe" that the retainer was deposited, and further told the Director that there were no documents in Grigsby's possession regarding the transaction. In reality, Grigsby had deposited $10,000 of the retainer into his personal account, but had not kept any bank statements or check registers with respect to the account and no records whatsoever of receipt of the balance of the retainer. The Director later asked whether Grigsby maintained a cash receipts journal for 2002 or 2003. Kautzer, on Grigsby's behalf, told the Director that Grigsby "maintained a log of payments he received during 2002." This statement was also false; the referee found Grigsby had no payments log for 2002.

There were also delays in the production of Grigsby's income tax returns. The Director first requested copies in March 2004; the returns were not produced until October 2004, and then only after three reminders from the Director's office.

On April 2, 2007, the Director filed a petition for disciplinary action, charging Grigsby with failure to file individual income tax returns, failure to report all of his income on returns that were filed, failure to maintain practice-related books and records, failure to use written retainer agreements, and failure to cooperate with and making false statements during the Director's investigation. We appointed the Honorable Warren E. Litynski to act as referee, and a hearing was held before the referee on July 17, 2007.

The referee filed his Findings of Fact, Conclusions of Law, and Recommendation for Discipline on September 20, 2007. The referee concluded that Grigsby's failure to timely file state and federal tax returns violated Minn. R. Prof. Conduct 8.4(b) and (d).[1] The referee further concluded that Grigsby's failure to report income on those returns violated Minn. R. Prof. Conduct

1. Rule 8.4(b) makes it professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Rule 8.4(d) makes it professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

8.4(c).[2] The referee concluded that Grigsby's failure to maintain practice-related books and records violated Minn. R. Prof. Conduct 1.15(h)[3] and Grigsby's failure to use written retainer agreements violated Minn. R. Prof. Conduct 1.15, as further interpreted by Lawyers Professional Responsibility Board Opinion 15.[4] Finally, the referee concluded that Grigsby's misrepresentations to the Director and failure to cooperate with the Director's investigation violated Minn. R. Prof. Conduct 8.1(a)(1) and (3),[5] 8.4(c) and (d),[6] and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[7] The referee recommended that Grigsby be suspended for 60 days.

The Director filed a brief challenging the referee's recommendation of a 60–day suspension, asking us to instead suspend Grigsby for a minimum of one year. Grigsby's brief also challenged the referee's recommendation of a 60–day suspension, arguing that the appropriate sanction for failure to timely file his individual income tax returns was a 30–day suspension and that the remainder of the alleged rule violations were not sufficient to justify a lengthier suspension.

After filing Grigsby's initial brief, however, attorney Kautzer withdrew. Grigsby, acting pro se, moved to delay oral arguments in the case and to remand the matter to the referee for rehearing. Grigsby asserted that it had been Kautzer who had redacted the bank statement reflecting the wire transfer, as demonstrated by the fact that Grigsby had located the unredacted bank statement in Kautzer's file. Grigsby argued, therefore, that any failure to cooperate should be charged to his counsel, and that any inferences drawn by the referee from the failure to cooperate as to Grigsby's own credibility were unfounded.

We delayed oral argument in the case in order to allow Grigsby to retain new counsel. We heard oral argument in April 2008 and thereafter referred the matter to

2. Rule 8.4(c) makes it professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

3. Rule 1.15(h) requires lawyers engaged in the private practice of law to maintain "books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law."

4. The conduct with which Grigsby was charged occurred before certain amendments to the Rules of Professional Conduct took effect on October 1, 2005. Accordingly, the referee applied the Rules as they existed through September 30, 2005, including Lawyers Professional Responsibility Board Opinion 15 interpreting Minn. R. Prof. Conduct 1.15. Before its repeal in January 2006, Board Opinion 15 stated that all "advance fee payments" must be deposited into a trust account. On the other hand, Board Opinion 15 stated that funds paid pursuant to a "nonrefundable retainer agreement" need not be deposited into a trust account. Board Opinion 15 presumes that all fees paid at the beginning of the representation are advance fee payments "unless a written fee agreement signed by the client states otherwise."

5. Before October 1, 2005, Rule 8.1(a)(1) made it professional misconduct for a lawyer to knowingly make a false statement of material fact in connection with a disciplinary matter. Rule 8.1(a)(3) made it professional misconduct for a lawyer to knowingly fail to respond to a disciplinary authority's lawfully authorized demand for information.

6. Rule 8.4(d) makes it professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice."

7. Rule 25(a), RLPR, requires a lawyer who is the subject of an investigation to cooperate with the Director by, among other things, complying with reasonable requests to furnish designated documents. Rule 25(b) makes violation of the rule unprofessional conduct and grounds for discipline.

Judge Litynski for additional findings of fact concerning the redaction of the bank statement. The referee conducted a hearing in August 2008 and thereafter filed amended findings of fact, conclusions of law, and recommendations for discipline. The referee amended one finding of fact and deleted another, both concerning redaction of attorney K.B.'s bank statement, but did not change his conclusions of law or recommendation of a 60–day suspension.

## I.

In disciplinary proceedings, the Director bears the burden of proving by clear and convincing evidence that the respondent violated the Rules of Professional Conduct. *In re Westby,* 639 N.W.2d 358, 367 (Minn.2002). Because transcripts of the July 2007 and August 2008 hearings before the referee were ordered, neither the referee's initial nor amended findings of fact and conclusions of law are binding on us. *In re Peterson,* 718 N.W.2d 849, 853 (Minn.2006); Rule 14(e), RLPR. But we give "great deference" to the referee's findings, *In re Wentzell,* 656 N.W.2d 402, 405 (Minn.2003), and we will uphold the referee's findings and conclusions "if they have evidentiary support in the record and are not clearly erroneous." *In re Moulton,* 721 N.W.2d 900, 905 (Minn.2006), *amended by In re Moulton,* 733 N.W.2d 777 (Minn.2007).

Grigsby first challenges the referee's conclusion that he violated Minn. R. Prof. Conduct 8.4(c) by failing to report to federal and state taxing authorities all of his practice-related income. The referee found that Grigsby received nonrefundable retainers in 2002 totaling $47,100, but reported gross receipts on his federal and state income tax returns of only $18,068. Similarly, the referee found that Grigsby received nonrefundable retainers in 2003

totaling $127,050, but reported gross receipts on his federal and state income tax returns of only $77,934.50.

Grigsby does not dispute the accuracy of the referee's factual findings, but rather contends that the referee should have made additional factual findings explaining the discrepancy between Grigsby's receipts and his reported income. Grigsby argues that what he reported to taxing authorities as gross practice-related receipts were actually net receipts, after attorney K.B. (to whom Grigsby initially transferred all client receipts and from whom Grigsby rented office space) subtracted Grigsby's share of expenses. Grigsby contends that, because what attorney K.B. subtracted would have been deductible to Grigsby, his underreporting of gross receipts did not reduce his overall tax liability.

We review the lack of particular factual findings by the referee for clear error. *See In re Wood,* 716 N.W.2d 341, 347 (Minn.2006). We conclude, for several reasons, that the referee did not commit clear error in failing to make the requested findings. First, there is no documentation in the record before us as to how much attorney K.B. subtracted before he paid Grigsby or why. *See In re Pierce,* 706 N.W.2d 749, 757 (Minn.2005) (placing the burden of producing evidence of mitigating circumstances on the lawyer). Therefore, there was no basis on which the referee could have found that attorney K.B. withheld funds for only those expenses that would have been deductible to Grigsby. Second, Grigsby's federal income tax returns for 2002 and 2003, two of the years at issue here, include deductions for "office expenses" ostensibly paid directly by Grigsby himself, which is inconsistent with Grigsby's claim that all practice-related expenses in those years were paid by attorney K.B. The referee did not

clearly err in not making the requested findings.

Grigsby further argues that, in order to be convicted of tax evasion under 26 U.S.C. § 7201 (2000), there must have been willful failure to pay taxes, a willfulness that Grigsby argues cannot be inferred from the simple fact that he understated his income. Therefore, Grigsby argues, he has not engaged in conduct that involved dishonesty, fraud, deceit, or misrepresentation in violation of Minn. R. Prof. Conduct 8.4(c).[8]

We have never equated a violation of Minn. R. Prof. Conduct 8.4(c) with the commission of a crime, as evidenced by the fact that there is a separate provision in the Rules of Professional Conduct that makes the commission of certain crimes professional misconduct as well. *See* Minn. R. Prof. Conduct 8.4(b) (making it professional misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects"). Nor is Rule 8.4(c) limited, by its terms, to intentional misrepresentations; rather, the rule makes it professional misconduct to engage in dishonesty, deceit, or misrepresentation, as well as fraud. Finally, Grigsby's misrepresentations to the Director during the course of the Director's investigation alone are a violation of Rule 8.4(c). *See In re Holker,* 730 N.W.2d 768, 774 (Minn. 2007); *Pierce,* 706 N.W.2d at 754; *In re Fuller,* 621 N.W.2d 460, 469 (Minn.2001). The referee did not err in concluding that Grigsby violated Rule 8.4(c).

■ Grigsby further contends that the referee should have found, as mitigating factors, that Grigsby testified as to his understanding of the importance of his tax obligations, that Grigsby has been current in filing his state and federal tax returns since 2002, that Grigsby has changed his office procedures to keep the books and records required by the Rules of Professional Conduct, and that Grigsby now uses written retainer agreements. Compliance with the law is no mitigating factor. *See Moulton,* 721 N.W.2d at 906. Filing state and federal income tax returns is required by law. *See* 26 U.S.C. § 6012(a)(1)(A) (requiring an income tax return of every single individual whose gross income for the taxable year exceeds the sum of the exemption amount plus the applicable standard deduction); Minn.Stat. § 289A.08, subd. 1(a) (2008) (requiring taxpayers to file a state income tax return for each taxable year in which the taxpayer is required to file a federal income tax return). Similarly, compliance with the Rules of Professional Conduct is not a mitigating factor: it is required of all lawyers in the state. Keeping practice-related books and records and using written retainer agreements in the case of nonrefundable fees are both required by the Rules of Professional Conduct. Minn. R. Prof. Conduct 1.15(h), 1.5(b). The referee did not err in failing to find these as mitigating factors.

■ Grigsby further challenges the referee's finding that he failed to cooperate with and made misrepresentations during the Director's investigation. Grigsby contends that all of the Director's correspondence was responded to and all documents requested by the Director were produced, although admittedly not within the time frames requested by the Director. But, Grigsby contends, neither the Rules of

---

**8.** Although Grigsby does not challenge the referee's conclusion that his failure to file income tax returns violated Minn. R. Prof. Conduct 8.4(b) (commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects"), we conclude that the referee's conclusion that Grigsby committed "a criminal act" is not supported by the record.

Professional Conduct nor the Rules of Professional Responsibility required him to respond to the Director's correspondence or produce documents within the times unilaterally established by the Director.

■■■ Failure to cooperate with an investigation or with the disciplinary process is itself a separate act of professional misconduct. *In re Milloy,* 571 N.W.2d 39, 45 (Minn.1997). Our review of the record confirms the referee's findings that Grigsby often failed to timely respond to the Director's requests for information. But Grigsby's failure to cooperate with the Director's investigation goes beyond untimely responses. Grigsby routinely failed to provide the information requested by the Director, whether on a timely basis or not, and actively misrepresented to the Director what information was and was not available and why.

■■■ Grigsby argues that the untimeliness of his responses to the Director's correspondence and the misrepresentations made to the Director during the course of the investigation are the fault of his attorney, Kautzer. The record before us does not disclose whether the delays in responding to the Director's requests occurred because Kautzer did not timely forward the Director's requests to Grigsby, whether Grigsby did not timely provide the requested information to Kautzer, or whether Kautzer delayed in forwarding the requested information to the Director. Nor does the record before us disclose whether Kautzer did not accurately forward the Director's requests to Grigsby, or whether Grigsby did not accurately provide the requested information to Kautzer, or whether Kautzer misconveyed Grigsby's responses. These are questions we need

not resolve here. It is sufficient for purposes of this disciplinary petition that Grigsby was copied on his counsel's correspondence to the Director, Grigsby testified he received copies of the Director's correspondence to Kautzer, and Grigsby testified that he worked closely with Kautzer in formulating responses. A lawyer who is subject to a disciplinary proceeding, whether represented by counsel or not, is responsible for his participation in it. We conclude that the referee's finding that Grigsby failed to cooperate with the Director's investigation, in violation of Minn. R. Prof. Conduct 8.1(a)(1) and (3), 8.4(c) and (d), and Rule 25, RLPR, is not clearly erroneous.[9]

## II.

We turn to the appropriate sanction for Grigsby's misconduct. The referee recommended a 60–day suspension. The Director argues for an indefinite suspension with no right to petition for reinstatement for at least a year. Grigsby argues for a 90–day suspension, 30 days to be imposed and the balance stayed on unspecified conditions.

■■■ Although we place great weight on the referee's recommended discipline, we retain responsibility for determining the appropriate sanction. *In re Nelson,* 733 N.W.2d 458, 463 (Minn.2007). In determining the appropriate sanction, we consider several factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *Id.* We look to similar cases for guidance, but we make the final determination on a case-by-case

---

9. Grigsby does not appear to challenge the referee's conclusion that he failed to maintain the books and records required by Minn. R. Prof. Conduct 1.15, or the referee's conclu-sion that his failure to enter into written agreements with clients in connection with nonrefundable fees violated Minn. R. Prof. Conduct 1.5.

basis. *Id.* at 463–64. In this case, we adopt the referee's recommendation of a 60–day suspension.

 More than 35 years ago, we warned that "disciplinary proceedings are mandatory in all cases of failure to file income tax returns" and that "for violations occurring hereafter, the discipline will consist of either suspension or disbarment." *In re Bunker,* 294 Minn. 47, 55, 199 N.W.2d 628, 632 (1972). As a result, Grigsby's failure to file income tax returns, and failure to report income on those returns once filed, alone warrant suspension. *See, e.g., In re Chinquist,* 671 N.W.2d 741, 741–42 (Minn.2003) (imposing 90–day suspension for failure to file tax returns for ten years); *In re Bailey,* 649 N.W.2d 140, 141 (Minn.2002) (imposing 90–day suspension for failing to timely file tax returns for three years).

We agree with Grigsby that his failure to maintain the books and records required by the Rules of Professional Conduct and his failure to use written retainer agreements in cases in which the client's advance fee payments were to be nonrefundable do not themselves warrant suspension. *See, e.g., In re Anderson,* 491 N.W.2d 656, 657 (Minn.1992) (imposing supervised probation for failure to maintain required books and records). However, Grigsby's failure to cooperate with and misrepresentations to the Director do warrant suspension. *See, e.g., In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005) (imposing indefinite suspension, with no right to apply for reinstatement for two years, based in part on failure to cooperate with the Director); *In re De Rycke,* 707 N.W.2d 370, 375 (Minn.2006) (citing failure to cooperate with the Director as a factor increasing the severity of the sanction to be imposed for other professional misconduct). We note that Grigsby has no previous disciplinary history, and we distinguish Grigsby's delays in providing information to the Director from a complete refusal to cooperate.

Accordingly, we order that:

1. Respondent Stephen Vincent Grigsby is suspended from the practice of law for a period of 60 days. Respondent shall be conditionally reinstated following the end of the suspension period provided that, at least 15 days before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that respondent is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has satisfactorily complied with all other conditions here imposed.

2. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals). Pursuant to Rule 18(e)(3), RLPR, within one year of the date of filing of this opinion, respondent shall file with the court and serve upon the Director proof of his successful completion of the professional responsibility portion of the state bar examination; failure to do so shall result in respondent's re-suspension.

3. Respondent shall pay the sum of $900 in costs pursuant to Rule 24(a), RLPR.

So ordered.

MAGNUSON, C.J., took no part in the consideration or decision of this case.