**In re Petition for DISCIPLINARY ACTION AGAINST William D. PAUL, a Minnesota Attorney, Registration No. 164811.**

No. A09–2166.

Supreme Court of Minnesota.

Feb. 8, 2012.

---

Martin A. Cole, Director, Timothy M. Burke, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

William D. Paul, Duluth, MN, pro se.

## OPINION

### PER CURIAM.

This discipline case involving respondent attorney William D. Paul arises out of a petition and supplementary petition for disciplinary action filed by the Director of the Office of Lawyers Professional Responsibility ("OLPR"). A referee appointed by our court heard evidence for and against the petition and supplementary petition, concluded Paul engaged in misconduct, and recommended that Paul be indefinitely suspended from the practice of law for a minimum of six months. Paul disputes the referee's finding that he improperly notarized an affidavit. We indefinitely suspend Paul from the practice of law for a minimum of four months.

Respondent attorney William D. Paul was admitted to practice law in Minnesota in 1985. Over the last 20 years, he has received five admonitions, one public reprimand, and has been placed on supervised probation twice. His prior misconduct includes instructing investigators working for him to directly contact a represented party and then ratifying the misconduct by attempting to use the admissions gained in that communication; failing to handle a matter with adequate diligence and promptness; failing to communicate with clients; failing to pay a valid, law-related judgment entered against him; failing to promptly return a file to a client; engaging in a pattern of improperly depositing fee and cost advances in his business account; failing to safeguard client funds; failing to cooperate with a disciplinary investigation; failing to provide an accounting of his attorney fees upon request of a client; and conditioning a refund of attorney fees upon a client agreeing not to file a professional responsibility complaint.

In 2009, the Director of the OLPR filed a petition for disciplinary action against Paul. The Director alleged that Paul had committed numerous violations of the Minnesota Rules of Professional Conduct and one violation of the Rules on Lawyers Professional Responsibility. We appointed a referee to make findings of fact and conclusions of law and to recommend appropriate discipline. After conducting an evidentiary hearing in July 2010, the referee filed with our court findings of fact, conclusions of law, and a recommendation for discipline. The referee concluded that Paul violated Minn. R. Prof. Conduct 3.2 and 8.1(b) and Rule 25 of the Rules on Lawyers Professional Responsibility (RLPR). Based on his findings and con-

clusions, the referee recommended that Paul be suspended from the practice of law for 30 days and placed on supervised probation for 2 years.

On August 19, 2010, before the briefing order was issued, the Director filed a supplementary petition for disciplinary action, alleging additional misconduct. We appointed the same referee to make findings of fact and conclusions of law and to recommend appropriate discipline, with respect to the allegations of the supplementary petition. After conducting an evidentiary hearing on the supplementary petition in January 2011, the referee filed with our court on March 22, 2011, findings of fact, conclusions of law, and a recommendation for discipline. The referee concluded that Paul violated Minn. R. Prof. Conduct 1.1, 1.3, 3.4(c), 8.4(c), and 8.4(d) during his representation in three client matters and failed to cooperate with the Director's investigations of those client matters, in violation of Rule 25, RLPR. Based on his findings and conclusions, the referee recommended that Paul be indefinitely suspended from the practice of law for a minimum of six months. Paul ordered a transcript within 10 days of the date when the referee filed his findings of fact, conclusions of law, and recommendation for discipline.

The following recitation of facts is based upon the portions of the referee's findings of fact that set forth the undisputed evidence.

### The P.Q. Matter

Paul admitted the factual accuracy of the allegations in count I of the Director's petition regarding the P.Q. matter. The referee incorporated the allegations in count I of the petition by reference, and the recitation of facts here regarding the P.Q. matter reflects Paul's admissions.

In September 2008, P.Q. retained Paul to appeal a conciliation court judgment against P.Q. Paul served and filed a notice of appeal with the court of appeals but failed to file the statement of the case required by Minn. R. Civ.App. P. 133.03. The clerk of appellate courts directed Paul to file two copies of a statement of the case within 10 days. He did not do so within 10 days. Eventually, and only after a court of appeals order to do so and threatening sanctions, Paul filed a statement of the case.

In the statement of the case, Paul stated that a full transcript was necessary for the appeal. Despite an order of the court of appeals directing Paul to order a transcript, Paul failed to serve and file a completed certificate as to transcript. Consequently, the court of appeals dismissed the appeal.

### The J.F. Matter

J.F. retained Paul to represent him in a child support matter scheduled for hearing on February 24, 2010. J.F. planned to attend the hearing, but Paul told him not to attend.

Paul's paralegal testified that Paul asked her to get a continuance of the hearing the day before it was scheduled. She stated that Paul instructed her to get a continuance because Paul was not sure he "would be there on time, or able to be there at all." Paul was involved in a 3–day trial that was to break the same day as the child support hearing, in order to allow Paul to attend two oral arguments before the court of appeals that morning. The paralegal called the Assistant St. Louis County Attorney assigned to the child support matter, who had no objection to the requested continuance. The paralegal also left a voice message on the magistrate's phone, stating that there was an agreement to a continuance. The paralegal also called the court administrator, who said she would deliver a note to the magistrate. Based on these efforts, the paralegal assumed that a continuance had been grant-

ed and communicated this to Paul. At Paul's direction, she called J.F. and left a message telling him he did not need to attend the hearing. Significantly, Paul never contacted the child support recipient to secure her consent to the continuance.

The continuance was not granted, and the hearing occurred as scheduled. The February 24, 2010, order provided, among other things, that J.F. pay $426 per month (ultimately increased to $465 per month in a subsequent order) in child support. In the order, the child support magistrate noted that, although counsel "did not object to a continuance," "the decision whether or not to continue" a hearing "would have to be made by the magistrate." The order also noted:

> The magistrate was not informed of any request to continue the February 24, 2010 hearing prior to that hearing and, had he been contacted, would have provided his standard response that no continuance would be granted, at that late stage, absent the consent of both the County *and the other party to the proceeding.*

> The Obligee appeared at the February 24, 2010 hearing, *after driving 4–1/2 hours, one way, to get there,* and, when asked, informed the magistrate she had not been contacted by [J.F.] or anyone else acting on his behalf about a continuance of that hearing.

> [J.F.] has had notice of the February 24, 2010 [sic] since service of the motion to modify child support, by first class mail, on January 22, 2010, or for over one month. Any request to continue that hearing, on less than one day's notice, without even contacting the Obligee, would be denied, as unreasonable and without good cause and, consequently, the hearing proceeded, as scheduled.

*The D.K. Matter*

The recitation of facts for the D.K. matter reflects not only the referee's findings of fact but the record as well.

Paul sought to intervene in a family court proceeding in order to obtain visitation rights for his clients with the clients' grandchildren. After a CHIPS petition was filed against the biological parents of the minor children, the children were adjudicated in need of protection or services in July 2007. Pursuant to an agreement with the biological parents, permanent legal and physical custody of the minor children was transferred to H.M. and K.M. in April 2008, subject to reasonable parenting time for the biological parents and visitation for extended family members at the discretion of H.M. and K.M. The matter was then transferred to the family court.

In September 2008, Paul filed a motion to intervene for visitation and to modify custody on behalf of the grandparents. In violation of court rules, the motion did not state a date for the hearing and was not accompanied by an affidavit of service. The district court directed staff to advise Paul to serve and file a petition for custody. But Paul did not do so.

In January 2009, the biological mother of the children filed a motion for parenting-time assistance. On the day of the hearing, March 4, 2009, Paul filed an amended motion to intervene for visitation and to modify custody. Paul appeared at the parenting-time assistance hearing and asked the court to hear the amended motion for intervention. But Paul had not properly served the amended motion, and the other parties were not prepared to respond to the motion. During the hearing, the court again advised Paul that a petition for custody and the creation of a new file would be the proper way to proceed with his clients' request for relief. The court specifically told Paul that once a

petition for custody was filed, consolidation or joinder would occur. On March 16, 2009, opposing counsel sent a letter to Paul stating that the amended motion had "no basis in the law." Opposing counsel also stated that his client would seek sanctions under Minn. R. Civ. P. 11 if the motion was not voluntarily dismissed.

In its order denying the grandparents' motion to intervene, the district court noted, "[I]ntervention would be proper if the matter had not been previously adjudicated. It is clear that the motion is not timely." The court ordered Paul to pay $1,500 within 30 days to opposing counsel for attorney's fees incurred in responding to the amended motion for intervention. Although Paul eventually paid the $1,500 sanction to opposing counsel, the payment was untimely.

*The R.V. Matter*

The Director alleged that Paul directed his client, R.V., in connection with a probate matter, to pre-sign signature pages and then directed a notary public to improperly notarize one of these pre-signed signature pages. In his answer, Paul stated:

> In order to make it convenient for [R.V.], i.e. [R.V.] would not have to come back from the Twin Cities to sign an affidavit signature page, it was discussed and agreed that [R.V.] would pre-sign affidavit pages which would then be attached to his affidavit after it was transcribed.

The signature lines were strategically placed (high on the page, in the middle of the page, and at the bottom of the page) so that wherever the affidavit ended, one of the signature pages could be used to disguise the fact that the signature was in place before the affidavit was prepared.

*Failure To Cooperate*

The Director alleged that Paul failed to cooperate with the Director's investigation of several complaints against Paul. On August 11, 2008, the Director mailed to Paul a notice of investigation of M.F.'s complaint. The notice requested Paul to provide his complete written response within 14 days of the notice. On September 30, 2008, the Director mailed Paul a notice of investigation of J.D.'s complaint, which also requested Paul to provide his written response within 14 days. On October 28, 2008, the Director mailed a notice of investigation of M.B.'s complaint, which requested Paul to provide his written response within 14 days.

In the first half of November 2008, the district ethics committee (DEC) investigator for the J.D. matter and Paul exchanged several phone messages, and on November 13, 2008, the investigator and Paul spoke on the telephone. Paul stated that he would send a response to the J.D. complaint but did not timely respond. On December 1, 2, and 3, 2008, the DEC investigator for the J.D. matter called Paul and left messages, but Paul did not return the calls or respond to the J.D. complaint.

On December 9, 2008, the DEC investigator for the M.B. matter called Paul requesting his response. Paul replied that the matter was in arbitration. The DEC investigator advised Paul that he must respond, but Paul did not do so. On December 22, 2008, the investigator again called Paul, requesting Paul's response. On December 23, 2008, Paul finally provided his response to the M.B. matter.

On January 16, 2009, the Director advised Paul that his office would be handling the M.F., J.D., M.B., and R.N. matters. On January 20, 2009, the Director requested complete responses to the M.F. and J.D. matters. Paul requested additional time to respond on February 12, 2009, and eventually provided responses on February 17, 2009.

On May 17, 2010, the Director mailed to Paul's attorney a notice of investigation of

J.F.'s complaint, which required a written response and certain documents within 14 days. Paul sent the requested documents to the OLPR on June 16, 2010. On June 21, 2010, the Director wrote to Paul's attorney requesting Paul's written response. Paul's attorney told the Director by telephone on July 29, 2010, that Paul was working on his written response, which was eventually provided.

On July 1, 2010, the Director mailed to Paul a notice of investigation of A.B.'s complaint, which required a written response and the entire client file within 14 days. On July 26, 2010, Paul provided a response to the Director and enclosed a copy of the case file. In a letter dated August 6, 2010, Paul made an additional response to the Director regarding the A.B. complaint. In his testimony, Paul admitted that not all of his letters met the time limits set forth by the Director.

*Referee's Conclusions of Law*

The referee concluded that Paul failed to timely file the required statement of the case and certificate as to transcript during his representation of P.Q., in violation of Minn. R. Prof. Conduct 3.2.[1] The referee further concluded that Paul's "late, ineffectual attempt to obtain a continuance of the hearing" and his "failure to appear at the hearing and his office's instruction to [J.F.] not to appear at the hearing" violated Minn. R. Prof. Conduct 1.1 and 1.3.[2] The referee also concluded that Paul's failure to properly serve his motion and amended motion and his failure to respond to the instruction from the district court in the D.K. visitation matter violated Minn. R. Prof. Conduct 3.4(c) and 8.4(d),[3] and Paul's "procurement of and participation in" an improper notarization in the R.V. matter violated Minn. R. Prof. Conduct 8.4(c).[4] Finally, the referee concluded that Paul's failure to cooperate promptly with the Director's investigations violated Minn. R. Prof. Conduct 8.1(b), and Rule 25, RLPR.[5] The referee recommended that Paul be indefinitely suspended from the practice of law for a minimum of 6 months.

**I.**

Paul argues that (1) his due process rights were violated when he was not per-

1. Minn. R. Prof. Conduct 3.2, provides that a lawyer "shall make reasonable efforts to expedite litigation consistent with the interests of the client."

2. Minn. R. Prof. Conduct 1.1, provides that a lawyer "shall provide competent representation to a client," which requires "the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Minn. R. Prof. Conduct 1.3, requires lawyers to "act with reasonable diligence and promptness in representing a client."

3. Minn. R. Prof. Conduct 3.4(c), provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal." Minn. R. Prof. Conduct 8.4(d), states that professional misconduct includes engaging in "conduct that is prejudicial to the administration of justice."

4. Minn. R. Prof. Conduct 8.4(c), states that professional misconduct includes engaging in conduct "involving dishonesty, fraud, deceit, or misrepresentation."

5. Minn. R. Prof. Conduct 8.1(b), provides, among other things, that lawyers shall not, in connection with a disciplinary matter, "knowingly fail to respond to a lawful demand for information from a[ ] . . . disciplinary authority." Rule 25, RLPR, provides:

> It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests, including requests to:
> (1) Furnish designated papers, documents or tangible objects;
> (2) Furnish in writing a full and complete explanation covering the matter under consideration.

mitted to have a panel hearing; (2) his failure to attend the child support hearing in the J.F. matter is not a violation of Minn. R. Prof. Conduct 1.1, requiring competence, or Minn. R. Prof. Conduct 1.3, requiring diligence; (3) the Director failed to prove by clear and convincing evidence that Paul's failure to properly file a petition for custody in the D.K. visitation matter violated Minn. R. Prof. Conduct 3.4(c), prohibiting knowing disobedience of a tribunal, and Minn. R. Prof. Conduct 8.4(d), regarding conduct prejudicial to the administration of justice; (4) the Director failed to prove by clear and convincing evidence that Paul procured and participated in an improper notarization in violation of Minn. R. Prof. Conduct 8.4(c); and (5) the Director failed to prove by clear and convincing evidence that Paul failed to cooperate in the A.B. investigation, in violation of Rule 25, RLPR.

### A.

■ We first address Paul's argument that his due process rights were violated when he was not permitted to have a panel hearing on the allegations set forth in the Director's supplementary petition for discipline. Paul states that a panel proceeding is "sort of [his] right to a jury trial" and that "[a]n attorney, who is the subject of a disciplinary action, should always have the right to have the matter heard by a panel." He claims that the only exception to this general rule is found in Rule 10(d), RLPR,[6] and that none of the allegations in this case can be considered "serious matters."

■ Paul's argument finds no support in the rules governing disciplinary proceedings. A lawyer subject to a disciplinary action may submit a request for a panel hearing but is not entitled to a hearing as a matter of right. Under Rule 9(a), RLPR, within 14 days after being notified of the charges, the lawyer "may submit a request that the Panel conduct a hearing," and under Rule 9(a)(2), RLPR, the Panel "*may* hear oral argument or conduct a hearing," but there is no language requiring the Panel to hold a hearing. (emphasis added). Furthermore, Paul ignores Rule 10(e), RLPR, which provides:

> **Additional Charges.** If a petition under Rule 12 is pending before this Court, the Director must present the matter to the Panel Chair, or if the matter was not heard by a Panel or the Panel Chair is unavailable, to the Board Chair or Vice–Chair, for approval before amending the petition to include additional charges based upon conduct committed before or after the petition was filed.

After the hearing on the original petition and while this matter remained pending before this court, the Director prepared a supplementary petition, which was presented and approved as required by Rule 10(e) before it was filed and served. Therefore, the referee properly considered the supplementary petition.

### B.

■ We next address Paul's challenges to the referee's findings of fact and conclusions of law. "At a disciplinary

---

6. Rule 10(d), RLPR, provides:
   **Other Serious Matters** In matters in which there are an attorney's admissions, civil findings, or apparently clear and convincing documentary evidence of an offense of a type for which the Court has suspended or disbarred lawyers in the past, such as misappropriation of funds, repeated non-filing of personal income tax returns, flagrant non-cooperation including failure to submit an answer or failure to attend a pre-hearing meeting as required by Rule 9, fraud and the like, the Director may either submit the matter to a Panel or upon a motion made with notice to the attorney and approved by the Panel Chair, file the petition under Rule 12.

hearing, the Director bears the burden of proving by clear and convincing evidence that a lawyer violated the Rules of Professional Conduct." *In re Varriano,* 755 N.W.2d 282, 288 (Minn.2008) (citations omitted). Because Paul ordered a transcript of the hearing before the referee, the referee's findings and conclusions are not conclusive, although we give great deference to the referee's findings and conclusions and will uphold them if they have evidentiary support in the record and are not clearly erroneous. Rule 14(e), RLPR; *Varriano,* 755 N.W.2d at 288 (citations omitted) (internal quotation marks omitted).

Paul challenges several of the referee's conclusions of law. We conclude that the referee committed clear error in concluding that Paul procured and participated in an improper notarization, in violation of Minn. R. Prof. Conduct 8.4(c), but conclude that all other findings of fact and conclusions of law are not clearly erroneous.

*The J.F. Matter*

█ Paul first challenges the referee's conclusion that his failure to attend the child support hearing on behalf of J.F. violated Minn. R. Prof. Conduct 1.1 and 1.3. Paul argues that his failure to attend the child support hearing was not an ethical violation because his failure to attend was due to a miscommunication, rather than neglect or inadvertence. He testified that his paralegal led him to reasonably believe that a continuance had been granted, and that after she told him, he directed her to call J.F., instructing him not to attend. Paul also argues that his failure to attend the scheduled child support hearing did not prejudice J.F. because J.F. did not have to pay more child support than his income required. Paul testified that after the hearing, he prepared a child support guidelines worksheet that established J.F.'s monthly net child support obligation as $465, which was more than the $426 per month J.F. was ordered to pay in the district court's February 24 order.

But even if J.F. suffered no financial loss as a result of Paul's failure to attend the child support hearing, Paul does not address the referee's findings and conclusions. The referee noted that Paul did not explain why he waited until the day before the February 24 hearing to attempt to obtain the continuance. The referee further noted that the 3–day trial and the arguments in the court of appeals are not matters that arise suddenly and create a last-minute crisis, so Paul was aware of these competing obligations long before the scheduled hearing date. Finally, the referee found that Paul should have known that a continuance must be agreed to by all parties and that his failure to contact an opposing party was an unreasonable omission capable of causing great prejudice to an opposing party. The referee's conclusion that Paul's conduct in the J.F. matter violated Minn. R. Prof. Conduct 1.1, requiring competence, and Minn. R. Prof. Conduct 1.3, requiring diligence, is not clearly erroneous.

*The D.K. Matter*

█ Paul next argues that the Director failed to prove by clear and convincing evidence that Paul's failure to respond to the advice from opposing counsel or to follow the instructions of the district court to properly file a petition for custody violated Minn. R. Prof. Conduct 3.4(c), prohibiting knowing disobedience of a tribunal, and Minn. R. Prof. Conduct 8.4(d), regarding conduct prejudicial to the administration of justice. Paul argues that seeking to intervene in an existing family court file was not an ethical violation because Minn. R. Civ. P. 24.02 permits an applicant to move for permissive intervention. Minn. R. Civ. P. 24.02 provides:

Upon timely application, anyone may be permitted to intervene in an action when an applicant's claim or defense and the

main action have a common question of law or fact.... In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Paul argues that he was improperly sanctioned for his motion to intervene because the two files were ultimately joined together, which was the relief sought by his clients. He also claims that his clients were benefited as a result of his behavior because their claims were assigned to a different judge.

■ Under Minn. R. Civ. P. 24.03, a person seeking to intervene must serve and file (1) a notice of intervention, which is automatically effective after 30 days if no one objects, and (2) a pleading "setting forth the nature and extent of every claim or defense as to which intervention is sought and the reasons for the claim of entitlement to intervention." In other words, a person can intervene only if he or she has some interest in the proceeding (in either one of the claims or one of the defenses) then before the court. The grandparents might have been able to intervene for the purpose of seeking custody before permanent custody was awarded to H.M. and K.M. But at the point that Paul filed the amended motion to intervene for visitation and to modify custody in March,[7] the only issue before the district court was the biological mother's request for parenting-time assistance, and nothing in Paul's motion indicated that the grandparents had an interest in the mother's parenting-time assistance. In the memorandum attached to its March 25, 2009 order, the district court noted, "[I]ntervention would be proper if the matter had not been previously adjudicated. It is clear that the motion is not timely."

Paul fails to address his violations of procedural rules. The referee concluded that Paul failed to properly file and serve his motion and amended motion to intervene for visitation and to modify custody: he never served the original motion, failed to file the amended motion far enough in advance of the hearing, and failed to serve the amended motion on all parties. These procedural violations were prejudicial to the administration of justice because they delayed the hearing on the mother's request for parenting time.

The referee's conclusion that Paul violated Minn. R. Prof. Conduct 3.4(c), prohibiting knowing disobedience of a tribunal, and Minn. R. Prof. Conduct 8.4(d), regarding conduct prejudicial to the administration of justice, is not clearly erroneous.

*The R.V. Matter*

■ Paul also challenges the referee's conclusion that he procured and participated in an improper notarization in violation of Minn. R. Prof. Conduct 8.4(c). In his supplementary petition for disciplinary action, the Director alleges: "[Paul] prepared the affidavit and thereafter attached one of the pre-signed signature pages to the affidavit. At [Paul's] direction, the signature was notarized by a notary who did not witness R.V.'s signature." We conclude, however, that the Director did not prove this allegation by clear and convincing evidence. Although Paul admitted that he directed R.V. to pre-sign signature pages, Paul testified R.V. signed the affidavit filed with the probate court in Paul's presence, and Paul then notarized the affidavit. There is nothing in the record contrary to Paul's testimony. Therefore, the referee's conclusion that Paul violated Minn. R. Prof. Conduct 8.4(c), is clearly erroneous.

---

7. Paul did not file a notice of motion with his September 2008 motion to intervene for visitation and to modify custody and did not properly serve this motion, so the district court was not called upon to act on the motion in September 2008.

*The A.B. Matter*

■ Paul challenges the referee's conclusion that he failed to cooperate in the A.B. investigation, in violation of Rule 25, RLPR. Paul argues that because he eventually responded to the requests by the Director and the rules do not contain a time limit, he did not fail to cooperate. We have found that failure to timely respond to requests for information during a disciplinary investigation constitutes a failure to cooperate and a violation of Rule 25, RLPR. *In re Ulanowski,* 800 N.W.2d 785, 800 (Minn.2011); *In re Grigsby,* 764 N.W.2d 54, 62 (Minn.2009). Although Paul's failure to cooperate in the A.B. investigation is clearly less serious than his failure to cooperate in, for example, the M.B. matter, the referee did not clearly err when he concluded that Paul failed to cooperate in the A.B. investigation.

In summary, we conclude that the referee committed clear error in concluding that Paul procured and participated in an improper notarization, in violation of Minn. R. Prof. Conduct 8.4(c). We conclude that the referee's conclusions that Paul's misconduct violated Minn. R. Prof. Conduct 1.1, 1.3, 3.2, 3.4(c), 8.1(b), and 8.4(d), and Rule 25, RLPR, on the other hand, were not clearly erroneous.

## II.

■ We now turn to the appropriate discipline. The purpose of professional discipline is not to punish the lawyer, but rather "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Karlsen,* 778 N.W.2d 307, 311 (Minn.2010) (citations omitted). We place great weight on a referee's recommended discipline but retain responsibility for determining the appropriate sanction. *Grigsby,* 764 N.W.2d at 62 (citing *In re Nelson,* 733 N.W.2d 458,

463 (Minn.2007)). "In determining the appropriate sanction, we consider several factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *Id.* (citation omitted). We impose sanctions "on a case-by-case basis, considering the specific acts of misconduct and any aggravating or mitigating circumstances, while looking to similar cases for guidance." *In re Brooks,* 696 N.W.2d 84, 88 (Minn.2005) (citation omitted).

The referee recommended that Paul be indefinitely suspended from the practice of law for a minimum of 6 months. We conclude, however, that indefinite suspension for a minimum of 4 months is the appropriate sanction.

*Nature and Cumulative Weight of the Misconduct*

■ Paul's misconduct is substantial and varied. The referee concluded that Paul failed to make reasonable efforts to expedite litigation; failed to provide competent representation; failed to act with reasonable diligence and promptness in representing a client; failed to obey court rules; engaged in conduct that is prejudicial to the administration of justice; failed to attend a hearing and improperly told his client not to appear; and failed to cooperate with disciplinary investigations.

We have held that failure to cooperate with a disciplinary investigation warrants discipline, including suspension. *In re Engel,* 538 N.W.2d 906, 906–07 (Minn.1995) (suspending indefinitely an attorney who failed to cooperate with disciplinary investigations); *In re Neill,* 486 N.W.2d 150, 151 (Minn.1992) (holding that failure to cooperate, without more, warrants suspension).

We have also held that repeated neglect of client matters warrants severe discipline. *In re Merlin,* 572 N.W.2d 737, 741 (Minn.1998) ("Indefinite suspension is typi-

cal in cases involving continued or repeated neglect of client matters without evidence of mitigating circumstances.") (citation omitted); *In re Flanery*, 431 N.W.2d 115, 118 (Minn.1988) (recognizing that, in cases of neglect of more than one client's matters, we have typically ordered either indefinite suspension or disbarment) (citation omitted).

■■ Moreover, Paul has engaged in multiple acts of misconduct, which typically warrant more severe sanctions. "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004) (citation omitted). "[M]ultiple acts of misconduct, including past disciplinary history, warrant a more severe sanction." *Ulanowski*, 800 N.W.2d at 801 (citations omitted); *see In re Lee*, 764 N.W.2d 19, 19 (Minn.2009) (imposing indefinite suspension for neglect of client matters, failure to communicate with clients, failure to account to clients, failure to protect client interests upon withdrawal from representation, failure to cooperate with the Director's investigation, and engaging in conduct prejudicial to the administration of justice); *In re Levenstein*, 438 N.W.2d 665, 668–69 (Minn.1989) (imposing an indefinite suspension for repeated instances of neglect of client matters, the continued practice of law while on suspended status, failure to respond to client requests to turn over information, and noncooperation during the disciplinary investigation). We conclude that Paul's misconduct merits the imposition of a serious sanction.

*Harm to the Public and the Legal Profession*

■■ Paul neglected multiple matters, failed to obey court rules, and failed to cooperate with disciplinary investigations. Neglect of client matters "generally undermines public confidence in the legal profession, which harms the public, the legal profession and the justice system." *In re Letourneau*, 792 N.W.2d 444, 453 (Minn.2011) (citations omitted) (internal quotation marks omitted). Failure to obey court rules and procedures is harmful to the justice system because it "needlessly increase[s] the burden on a heavily loaded and underfunded court system." *Id.* at 453. Furthermore, we have stated that failure to cooperate with a disciplinary investigation harms the legal system because it undermines "the integrity of the lawyer disciplinary system." *In re Gomsrud*, 618 N.W.2d 803, 805 (Minn.2000).

*Aggravating and Mitigating Factors*

The referee found that Paul's disciplinary history was a substantial aggravating factor.[8] *See In re Mayrand*, 723 N.W.2d 261, 269 (Minn.2006). We expect a previously-disciplined lawyer to demonstrate "a renewed commitment to comprehensive ethical and professional behavior." *In re Simonson*, 420 N.W.2d 903, 906 (Minn. 1988) (citation omitted). We have generally imposed "more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined." *Letourneau*, 792 N.W.2d at 452 (citing *In re Moore*, 692 N.W.2d 446, 450 (Minn.2005)) (internal quotation marks omitted). In *In re Coleman*, we indefinitely suspended an attorney for a minimum of 6 months because he engaged in multiple acts of misconduct and had an extensive disciplinary history of similar misconduct. 793 N.W.2d 296, 309 (Minn.2011). Paul has violated multiple rules and has an extensive disciplinary his-

8. The referee found lack of harm to P.Q. as a mitigating factor of Paul's conduct.

tory. Paul violated Minn. R. Prof. Conduct 1.1, 1.3, 3.2, 3.4(c), 8.1(b), and 8.4(d), and Rule 25, RLPR, and over the past 20 years, Paul has received five admonitions, one public reprimand, and was placed on supervised probation twice. Moreover, Paul has been disciplined previously for neglect of client matters and failure to cooperate with a disciplinary investigation, which is similar to some of his current misconduct.

The referee concluded that Paul's new violations and his response to them "demonstrate a continuing and heightened lack of insight, a lack of an appropriate legal and moral compass," and an "ability to rationalize any failure of his duty to his client as somehow benefiting the client." The referee also noted that "the failure of prior supervisory and rehabilitative efforts" and Paul's "inability to understand the goals and needs of his clients" require "discipline of a more severe nature." We agree with the referee's findings.

Accordingly, we order that:

1. Respondent William D. Paul be indefinitely suspended from the practice of law, effective 14 days after the filing of this order, and that he be ineligible to petition for reinstatement for a minimum of 4 months from the effective date of suspension.

2. Paul shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3. Paul shall pay $900 in costs, as required by Rule 24, RLPR.

4. If Paul seeks reinstatement, he shall comply with the requirements of Rule 18(e), RLPR.

So ordered.